JOHN H. FOWLER, APPELLEE, V. TODD A. DORAN ET AL., APPELLEES: NATIONAL SURETY COMPANY, APPELLANT.

FILED MARCH 31, 1932. No. 28143.

*C. Frank Reavis*, for appellant.

*Albert S. Johnston, Fred C. Foster* and *Frederick J. Patz*, contra.

Heard before GOSS, C. J., DEAN and PAINE, JJ., and CARTER and RHOADES, District Judges.

CARTER, District Judge.

This is an action brought by the plaintiff, John H. Fowler, against Todd A. Doran and others, alleging the existence of a mechanic's lien and praying for the foreclosure of the same. The defendant Conservative Mortgage Company by cross-petition alleged that it was the

holder of a mortgage upon the premises involved upon which was due the sum of $4,792.65 and prayed that said mortgage be declared a first lien on the premises. The defendant Clarence F. Young by cross-petition on behalf of himself and the North Side Planing Mill alleged that the defendant Doran and one Ernest L. Lowell entered into a contract for the construction of a dwelling-house on said premises, and that the faithful performance of said contract by Lowell in the furnishing of materials and the payment of the same was secured by a bond executed by the defendant National Surety Company; that said Young and the North Side Planing Mill upon the order of Lowell, the contractor, and in reliance upon the bond, manufactured certain millwork of the value of $1,695. On September 2, 1930, the contractor, Lowell, notified the owner, Doran, of his intention to rescind said contract. At the date of the rescission, millwork of the value of $346 had been delivered by the North Side Planing Mill, which, however, contended that the millwork was a special order, made especially for this job, and claimed that it was entitled to the full purchase price from the contractor and the National Surety Company, his bondsman. On the 19th day of August, 1930, the defendant Conservative Mortgage Company accepted in writing the order for the millwork and agreed to pay the sum of $1,695 on delivery. The trial court found generally for the North Side Planing Mill, and rendered a decree against the National Surety Company for $1,695, with interest, and an attorney's fee of $250; and a decree in the same amount in favor of the North Side Planing Mill against the Conservative Mortgage Company. The court further found that the Conservative Mortgage Company accepted the order and agreed to pay the North Side Planing Mill said sum. The court further decreed that upon the payment of said sum by the Conservative Mortgage Company to the North Side Planing Mill the Conservative Mortgage Company was entitled to enforce the payment of said amount against the National Surety Company to recoup itself. A foreclosure of the mechanic's lien held

by the North Side Planing Mill and of the mortgage of the Conservative Mortgage Company was decreed. All other parties holding claims or liens were paid off prior to the trial and their actions were dismissed. From the above decree, the National Surety Company prosecutes this appeal.

The evidence discloses that on January 9, 1930, one Lowell, a contractor, entered into an agreement with Todd A. Doran for the erection of a house to be built on the property involved herein. At or about the same time Lowell delivered to Doran a builder's bond, executed by the National Surety Company, the appellant herein, which provided, among other things: "The condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all costs and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect." The bond further provides that the contract with the owner is to be considered as a part of the bond, it being set out in the bond as follows: "Which agreement is by reference made a part hereof." The building contract referred to in the bond contains, among other things, the following provisions: "The contractor shall furnish and pay for all the materials and perform and pay for all the work for the erection of three (3) residences and three (3) garages as shown on the drawings and described in the specifications," one of the residences referred to therein being the one involved in this action. Some time prior to July 30, 1930, Lowell contracted with the North Side Planing Mill, which was owned by the defendant Clarence F. Young, for the millwork under the contract. Millwork of the value of $346 was manu-

factured and delivered prior to July 30, 1930, at which time Lowell signed a written contract for all the mill-work for the agreed price of $1,695. On August 19, 1930, Maude Young, the representative of the North Side Planing Mill, demanded assurance that the millwork would be paid for upon delivery, and as a result thereof the Conservative Mortgage Company, which had taken a mortgage on the premises in the sum of $9,000, which said $9,000 was payable to the owner in instalments as the construction progressed, accepted the order by indorsing thereon the following: "Pay $1,695 whenever all millwork has been delivered. Cons. Mtg. Co. By S. J. Fieselman, V. Pres." The testimony discloses that immediately after the acceptance of the order by the Conservative Mortgage Company, the manufacture of the millwork was commenced, and that the same was completed on September 12, 1930. It also appears from the record that on September 2, 1930, Lowell, the contractor, notified Doran, the owner, that he had rescinded the contract and that he would not complete the same. Clarence F. Young and Maude Young both testified that they or the North Side Planing Mill had no notice of the rescission until after the millwork was manufactured and ready for delivery. The National Surety Company contends that on or prior to August 14, 1930, it, through Lowell, demanded and received a sworn statement of the value of the millwork delivered at that time and that this amounted to notice of the rescission. An examination of the evidence discloses that a request was made of the North Side Planing Mill for the amount then due, but that there was nothing said that could be construed as a notice of a rescission. The testimony furnished by the National Surety Company was to the effect that Lowell did not leave the work until about August 25, 1930, and that notice thereof was not given to Doran, the owner, until September 2, 1930. It cannot therefore be said that the North Side Planing Mill had or could have had notice by virtue of any transactions prior to August 25, 1930. After the millwork was completed, attempts were made

by the North Side Planing Mill to deliver it, but because of the fact that there was no suitable place on the premises to protect it from the weather, and damage from other causes, it was held by the North Side Planing Mill subject to order. On October 17, 1930, Albert S. Johnston, the attorney for the North Side Planing Mill, interviewed John H. Fowler, president of the Conservative Mortgage Company and informed him that the millwork was ready for delivery. The result of this conversation was that it was mutually agreed that the millwork should be retained at the mill, rather than have it delivered at the premises, and that the rights of the parties should not be affected thereby. The evidence further discloses that on October 17, 1930, Albert S. Johnston informed C. F. Reavis, attorney for the National Surety Company, that the millwork was completed and was ready for delivery. The National Surety Company thereupon denied all liability as to all materials and millwork not theretofore delivered, and tendered the sum of $346, the agreed value of the millwork actually delivered and used in the construction of the building. The remainder of the millwork was delivered just before the trial was commenced in the district court on April 27, 1931.

The testimony shows conclusively that the millwork to be furnished by the North Side Planing Mill was of a special character, manufactured and designed for this particular building, and would have no value for any other purpose. Under such circumstances, the North Side Planing Mill could maintain an action against the buyer for the full price. Comp. St. 1929, sec. 69-463. The millwork was manufactured at the shop of the North Side Planing Mill. All parties concerned knew that it was to be manufactured at that place. It could hardly be material that the work of construction should proceed at the shop of the North Side Planing Mill, instead of on the premises in question. The planing mill completed the work and attempted to make delivery, but, because of the fact that the contractor had rescinded his contract, delivery was held up. This work was made up

for this particular job in the mill just as it could have been done on the premises. In these days a large proportion of the material furnished for the construction of buildings, such as cut stone, inside furnishings, etc., is prepared at the yard or shop of the contractor or manufacturer, in accordance with plans and specifications for particular buildings, with the implied consent of the owner, and which in many cases would be of comparatively little value for use elsewhere. Such work and materials should be deemed a part of the labor and materials "furnished" under the builder's contract in evidence in this case.

The appellant contends that the price of the millwork was not a lienable claim, and that the bond protects only those materialmen who furnished and delivered material for use in the premises. We are of the opinion that this position is not tenable. Had the bond in question only provided for security of payment of claims secured by liens upon the building, then perhaps there would have been some merit in this contention, for it seems to be conceded that, under the law, no lien could attach upon the building as security for the payment of the purchase price of material, labor, or otherwise; but this is not the case. The bond in question has a provision clearly contemplating security for the payment of claims such as that sued on in this action. The appellant in this case is a paid surety, and placing the construction on the bond that is usually applied in such cases, it appears clear to us that the words "pay all persons who have contracts directly with the principal for labor or materials" cover the claim of the North Side Planing Mill, whether or not it be lienable. The provision of the bond above referred to provides that, in addition to saving the owner harmless, the surety shall pay all persons who have contracts directly with the principal for labor and materials. This language shows that it was the intent of the parties to make the bond for the benefit of laborers and materialmen, as well as for the protection of the owner. The contract also provides that "the contractor shall furnish

and pay for all the materials," and the bond contains the provision that, "if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, * * * and shall pay all persons who have contracts directly with the principal for labor or materials." It is clearly the law that, under these provisions of the bond and contract, a materialman may maintain an action directly against the surety. In the case of *Knight & Jillson Co. v. Castle*, 172 Ind. 97, the court said:

"The contract under consideration contains the express promise 'to pay for all labor and materials used in said work when due,' and the provisions of the bond are that the contractors shall 'faithfully perform said contract on their part, according to the terms, covenants, and conditions thereof,' clearly bringing the case within the rule of the adjudicated cases in this state, and in many other states, that such contract and bond, taken together, constitute a contract primarily for the benefit of third persons, and that on default such third persons may maintain actions for its breach, and the rule will be found to be one inferable from the contract or bond, or both considered together. * * *

"Some of the cases put the proposition argumentatively, on the ground that, in that class of cases where liens cannot be acquired, it cannot be inferred as a matter of law that the contract is for the benefit of the obligee, for the reason that it is a matter of indifference to him whether the labor or material obligations are paid; others, that the obligation must be regarded as one inuring solely to the benefit of an obligee, and for his protection as owner. Neither of these propositions is put upon the correct basis. In the former class of cases there is a moral obligation to pay, and every man would prefer that the just claims for labor and material used in the construction of his building should be paid for, and that is a sufficient consideration to support the promise; but the obligation to pay the debt of another must arise from a written agreement, or not at all. Even in case of an in-

tention, that the promise shall be for the benefit of a third person, it must still be in writing. In the second example put, it is quite manifest that, where the express promise in contract or bond, or both, is to pay for labor or material, it is not an obligation to pay the owner of the property, for nothing is owing to him, unless he has been compelled to pay to protect his property, and it must follow that the primary obligation to pay runs to those who furnish material or perform labor, and thus it will be seen that the matter resolves itself into the question of construction of the written contract. This being true, if the obligee in the bond is compelled to pay, he has his remedy on the bond; but if the materialman or laborer elects to proceed upon the bond, instead of availing himself of the lien, if he can take a lien, the guarantor is not injured, or, in cases where a lien cannot be taken, and the laborer or materialman has but the one remedy, the guarantor is not injured, so that in either event the surety is not required to do any more than he has undertaken to do, nor to do it upon any other or different condition than the one he has undertaken, so that the matter resolves itself in each case into the question of the intention of the parties, as expressed by stipulations of the written agreement, and does not arise upon any implied agreement or equitable considerations. * * * This being true, there is no good reason why, in the avoidance of circuity of action, the third person, when he falls within the class for whose benefit, by express promise, or by the intention of the parties, an agreement is made, as disclosed by the agreement, though the direct obligee be another, may not bring and maintain an action for his own benefit, under the provisions of our Code authorizing suit by the real party in interest, who is construed to mean the person entitled to receive the benefits of the suit."

It is the contention of the appellant that the above rules apply only to public bonds, and not to private ones. The same rule is applied, however, in the case of *Orinoco Supply Co. v. Shaw Bros. Lumber Co.*, 160 N. Car. 428,

on a private bond. The court in its opinion saying: "There have been several later decisions of the court applying the principle that under certain circumstances the beneficiaries of a contract could recover thereon, though not named as parties, a principle that usually prevails when it appears by express stipulation or by reasonable intendment that the rights and interests of such beneficiaries were contemplated and being provided for. * * * In the case before us it appears that the contractor had agreed to pay 'for all labor and material supplied for the erection of the building, and to save the trustees of the church harmless from any and all claims and liens which might arise out of contracts made by him with material furnishers and laborers,' etc., and the bond sued on, signed by the surety company, contains express stipulation 'that said contractor shall faithfully perform and carry out said contract according to the true intent and meaning thereof.' These provisions, in our opinion, clearly contemplate that the contractor shall pay the materialmen and laborers, and constitute such claimants the beneficiaries of the contract and bond, within the principle of the authorities cited."

In the case of *Kaufmann v. Cooper,* 46 Neb. 644, this court has said: "It is also urged that the plaintiff was not a party to the bond, and that no action could accrue or be based thereon in its behalf. A precisely similar question to this one has been heretofore discussed in and by this court, and it was then held that the promise set forth in the condition of the bond under consideration was for the benefit and an action arose thereon in favor of the laborer to whom wages remained due or to the furnisher of material whose account or any portion thereof was unpaid. *Doll v. Crume,* 41 Neb. 655; *Lyman v. City of Lincoln,* 38 Neb. 794; *Korsmeyer Plumbing & Heating Co. v. McClay,* 43 Neb. 649; *Sample v. Hale,* 34 Neb. 220."

Under the above holdings, this court is of the opinion that the North Side Planing Mill could maintain this

action directly upon the bond, and that the judgment of the trial court in this respect was a correct one.

The appellant complains that the cross-petitions filed asking for money judgments against the National Surety Company are not germane to plaintiff's action. In view of the fact that this objection was not raised during the trial in the lower court, it cannot be assigned as error for the first time on appeal in this court. *Prudential Ins. Co. v. Qualset,* 116 Neb. 706.

Appellant also complains of the action of the trial court in giving the Conservative Mortgage Company a judgment against the National Surety Company for the $1,695 it agreed to pay in accepting the order of the North Side Planing Mill. In view of the fact that the money judgment obtained by the North Side Planing Mill against the National Surety Company is affirmed by this opinion, and as payment of it by the appellant will also satisfy the judgment complained of, we fail to see any prejudicial error in the action of the trial court. The Conservative Mortgage Company is in the position of a guarantor. In other words, the appellant can be subjected to only one liability, and it having been determined herein that it is liable directly on the bond to the North Side Planing Mill for the same amount, the proposition raised becomes a moot question, a determination of which is not necessary to a decision in this case.

Relative to the motion of the appellee Young, the owner of the North Side Planing Mill, for the allowance of an additional attorney's fee, the record disclosing that the sum of $250 has already been allowed by the trial court, we are of the opinion that an additional fee of $200 is ample and the same is hereby allowed.

Having found no prejudicial error in the record, the judgment of the trial court is in all respects

AFFIRMED.