T. H. LUNDT, DOING BUSINESS AS T. H. LUNDT
CONSTRUCTION COMPANY, APPELLEE, V. PARSONS
CONSTRUCTION COMPANY, A CORPORATION, APPELLANT.

150 N. W. 2d 108

Filed April 14, 1967. No. 36392.

Cassem, Tierney, Adams & Henatsch, for appellant.

Foulks, Wall & Wintroub, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

This is an action for damages brought by T. H. Lundt, doing business as the T. H. Lundt Construction Company, against the Parsons Construction Company. The jury returned a verdict for the plaintiff in the amount of $43,000. The defendant's motion for new trial was overruled and it has appealed.

Commencing November 12, 1959, and pursuant to a contract with the city of Omaha, Nebraska, the plaintiff constructed a storm sewer along the north edge of Dodge Street from about Seventy-second Street west to Little Papillion Creek. On April 19, 1960, the defendant commenced construction of a sanitary sewer along the north edge of Dodge Street. From about Seventy-seventh Street to the Little Papillion Creek, the sanitary sewer was parallel to and just north of the plaintiff's storm sewer. On that date the plaintiff's project was complete and its request for payment had been approved by the supervising engineer, but the storm sewer had not been accepted by the city of Omaha.

During the construction of the sanitary sewer by the defendant, damage to the plaintiff's storm sewer was observed. After the construction of the sanitary sewer had been completed, the city required the plaintiff to reconstruct that part of the storm sewer which was adjacent to the sanitary sewer constructed by the defendant. This action was brought to recover the expense incurred by the plaintiff in the reconstruction of the storm sewer.

The petition alleged two causes of action. The first cause of action alleged that the defendant had negligently damaged the storm sewer. The second cause of action alleged that the defendant's contract required it to protect all property along its line of construction and pay for all damage by it, and that the plaintiff was entitled to recover its damages under these provisions of the contract. The trial court submitted both causes of action to the jury. The defendant contends this was error and that the plaintiff has no right of recovery upon the theory of contract.

The defendant's contract in this case provided that it was required to use care in excavating for the sewer and that all utilities encountered must be protected at its expense. The contract further provided: "The Contractor shall, at his own expense, protect by false work,

braces, shoring or other effective means, all buildings, walls, fences and other property along his line of work or affected directly by his work, against damage and shall repair or repay the injured owners for such damage. * * * The Contractor shall exercise care to protect from injury all water pipes, existing sanitary sewer pipes, gas mains, telephone cables, electric cables, service pipes, and other fixtures which may be encountered during the progress of the work. Water and other service pipes and fixtures, if damaged, shall be repaired by the Contractor without additional compensation. * * * The Contractor shall personally check and verify utility information on plans. Protection is Contractor's responsibility."

The plaintiff's theory is that he is a third-party beneficiary entitled to sue the defendant directly for the damage to the storm sewer caused during the construction of the sanitary sewer. This court has recognized the right of a materialman to sue directly on a bond guaranteeing the performance of a construction contract where the contractor has promised to pay for all materials. Fowler v. Doran, 123 Neb. 37, 241 N. W. 759. In other jurisdictions a similar rule has been applied to property owners where the contractor promises to protect existing utilities and other property and agrees to repair damage caused by the construction. Oman Constr. Co. v. Tennessee Central Ry. Co., 212 Tenn. 556, 370 S. W. 2d 563; Baker v. S. A. Healy Co., 302 Ill. App. 634, 24 N. E. 2d 228; Louisville Gas & Electric Co. v. Longley & Co., 250 Ky. 324, 62 S. W. 2d 1036; Keefer v. Lombardi, 376 Pa. 367, 102 A. 2d 695; Bator v. Ford Motor Co., 269 Mich. 648, 257 N. W. 906; La Mourea v. Rhude, 209 Minn. 53, 295 N. W. 304; Freigy v. Gargaro Co., Inc., 223 Ind. 342, 60 N. E. 2d 288; Hayunga Holding Corp. v. Rodgers & Hagerty, Inc., 82 N. Y. S. 2d 340; Coley v. Cohen, 258 App. Div. 292, 17 N. Y. S. 2d 101; New York Pneumatic Service Co. v. P. T. Cox Contracting Co., 187 App. Div. 1, 175 N. Y. S. 153. See, also, Restate-

ment, Contracts, § 145, p. 173; 43 Am. Jur., Public Works and Contracts, § 82, p. 825; 17A C. J. S., Contracts, § 519 (7), p. 993. Although there is a division of authority on the question, we believe the better rule permits a property owner to sue the contractor directly where the contract contains a promise to protect existing property and repair damage resulting from the construction.

The defendant further contends that the evidence was not sufficient to support a finding that the damage to the storm sewer was caused by the defendant's construction of the sanitary sewer. In determining this question, the evidence must be considered in the light most favorable to the plaintiff. McGerr v. Beals, 180 Neb. 767, 145 N. W. 2d 579.

The storm sewer was constructed of corrugated metal pipe 54 inches in diameter. The pipe itself was fabricated from 12-gauge metal which is approximately 1/10 of an inch in thickness. The pipe is relatively flexible and requires lateral support from the soil or fill adjacent to it to maintain its circular shape and support the loads above it.

The sanitary sewer constructed by the defendant was located from 3 to 5 feet north of the storm sewer. The defendant excavated its trench by using a machine described as a "three-quarter yard backhoe." This machine was supported upon crawler tracks which were positioned upon either side of the trench. The jury could find that one track of this machine operated on the newly replaced fill above the storm sewer and exerted a heavy downward pressure as the trench for the sanitary sewer was dug. The jury could also find that the lateral support along the north side of the storm sewer was removed by the excavation of the trench for the sanitary sewer.

The construction of the storm sewer was supervised by the Leo A. Daly Company. Robert K. Dickerson, an engineer and a vice president of the Daly firm, testified

that in his opinion the failure of the storm sewer was caused by the removal of the fill from one side of the pipe and subjecting the fill above the pipe to heavy loads from construction equipment.

The construction of the sanitary sewer was supervised by Henningson, Durham & Richardson, Inc. Paul R. Ombruni, an engineer employed by the Henningson firm, designed the sanitary sewer constructed by the defendant. Ombruni testified that it was his opinion that the failure of the storm sewer was caused by the removal of lateral support in excavating for the sanitary sewer. Ombruni also testified that he felt that the defendant did not do a workmanlike job in protecting the storm sewer and that some other protection was necessary to protect the storm sewer during construction of the sanitary sewer.

Exhibit 29 is a copy of a letter from Henningson, Durham & Richardson, signed by Ombruni, dated June 17, 1960, and addressed to the sewer engineer of the city of Omaha. It is a five-page report concerning the damage to the storm sewer. After reviewing the circumstances involved, the report makes this comment: "Results of the inspection on the storm sewer previously described, after Parsons Construction Co. had completed work on the sanitary sewer, indicates failure of the storm sewer at numerous points. It is felt that these failures did occur during the construction of the sanitary outfall sewer. Heavy construction equipment was moving over the top of the storm sewer and at the same time the sewer's lateral support was removed by the open excavation for the sanitary sewer. The combination of these conditions were factors leading to the storm sewer failure."

The defendant produced evidence which contradicted that of the plaintiff and tended to establish its theory that the failure of the storm sewer was due to faulty construction. The effect of the defendant's evidence was to present a question for the jury. The defendant's

contention that the evidence was not sufficient to support the finding for the plaintiff cannot be sustained.

The plaintiff claimed damages of $35,164.70. The claim included material, labor, and equipment used in reconstructing the storm sewer, 15 percent of those amounts for overhead and similar charges, and $4,740 for engineering supervision. The defendant claims that the rental value of the equipment used, the 15 percent added for overhead, and the engineering supervision were not proper items of damage.

Much of the equipment used in reconstructing the storm sewer was owned by the plaintiff. In an effort to establish the value of the use of this equipment, the plaintiff proved, over objection, the rental value of the equipment. The defendant contends that the proper measure would have been the depreciation in the value of the equipment for the time involved. As pointed out by the plaintiff, the use of depreciation figures alone would not take into account maintenance and repair costs and other similar expenses connected with the ownership and use of the equipment. We think the trial court was correct in allowing the plaintiff to prove the rental value of the equipment as evidence of the value of its use in reconstructing the storm sewer.

In regard to the 15 percent added for overhead, the plaintiff's evidence established that the usual method of computing overhead and supervisory costs on a construction project was to add 15 percent to the total cost of the project and that 15 percent was a fair and reasonable rate. The evidence established that this was a proper item of damage.

The engineering supervision expense represented the charges made by the Daly company in connection with its supervision of the reconstruction of the storm sewer. Although the Daly company was employed by the city of Omaha, the statement for its services was sent to the plaintiff. This expense was a part of the cost of reconstruction of the storm sewer. We think it was a proper

item of damage as between the parties to this action.

By instruction No. 31, the trial court directed the jury to include interest in any verdict for the plaintiff on the second cause of action. The defendant contends that this instruction was erroneous. Since the verdict exceeded the amount of damages claimed by the plaintiff, it is apparent that the verdict included interest.

We have recently stated the rule concerning the right to recover interest on an unliquidated claim in a contract action. In Muller Enterprises, Inc. v. Gerber, 178 Neb. 463, 133 N. W. 2d 913, we held that recovery of interest on an unliquidated claim, the subject of reasonable controversy and incapable of being fixed by computation, may be had only from the date of determination of the right of recovery and the ascertainment of the amount. See, also, Colvin v. John Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900; National Fire Ins. Co. of Hartford v. Evertson, 157 Neb. 540, 60 N. W. 2d 638; School Dist. No. 65R v. Universal Surety Co., 178 Neb. 746, 135 N. W. 2d 232.

In this case there was a reasonable controversy as to the plaintiff's right to recover damages as well as to the amount thereof. The amount of the damages depended upon a determination of the reasonable value of material, labor, use of equipment, overhead expenses, and professional services. The claim was unliquidated and incapable of being fixed by computation. Although the defendant did not produce evidence as to the reasonable value of the various items of damage, the amount of the plaintiff's damages, under the circumstances in this case, remained a question of fact.

Instruction No. 31 advised the jury to include interest in a verdict on the second cause of action at the rate of 6 percent per annum from the date of the breach of the contract. The petition prayed for interest from February 25, 1961, the date on which reconstruction of the storm sewer was substantially complete. The verdict was returned on March 2, 1966. If February 25, 1961, is

assumed to be the date of the breach of the contract, the verdict included interest in the amount of $9,944.29. We determine that the verdict is excessive by that amount.

A verdict which is excessive because of the erroneous inclusion of interest may be cured by remittitur if the amount is subject to exact determination. Moore v. Schank, 148 Neb. 228, 27 N. W. 2d 165.

The judgment is reversed and the cause is remanded to the district court with directions to enter a judgment for the plaintiff in the amount of $33,055.71 if a remittitur in the amount of $9,944.29 is filed in the office of the clerk of that court within 10 days after the receipt of the mandate of this court. In the event a remittitur is not filed, a new trial as to the issue of damages shall be granted.

REVERSED AND REMANDED WITH DIRECTIONS.