EL FREDO PIZZA, INC., A NEBRASKA CORPORATION, ET AL.,
APPELLEES, v. ROTO-FLEX OVEN CO.,
A TEXAS CORPORATION, APPELLANT.

261 N. W. 2d 358

Filed January 4, 1978.   No. 41194.

(697)

Eugene L. Pieper of Thompson, Crounse & Pieper, for appellant.

James F. Kasher of Brady, Kasher & Pavel, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

In their second amended petition filed in the District Court for Douglas County, El Fredo Pizza, Inc., and Center Street Pizza, Inc., plaintiffs and appellees herein, alleged that defendants Roto-Flex Oven Co. and Kiesel Associates, Inc., had breached implied warranties of merchantability and fitness for a particular purpose in regard to a defective pizza oven sold by defendants to plaintiffs. Plaintiffs prayed for money damages in the amount of $24,802.60 for the cost of the oven, increased labor costs, and lost profits. Defendants entered general denials. Kiesel Associates, Inc., was dismissed from the action at the close of plaintiffs' evidence, leaving Roto-Flex Oven Co. ("Roto-Flex") as the sole defendant. The jury found that Roto-Flex had breached an implied warranty as to the fitness and merchantability of a pizza oven it sold for use in the retail pizza operation of Center Street Pizza, Inc., and awarded plaintiffs damages of $17,500. Roto-

Flex' motions to remit damages and for a new trial were overruled, and it has now appealed to this court, contending that the trial court erred in permitting El Fredo Pizza to remain as a party, and in submitting to the jury the questions of implied warranty of fitness for a particular purpose and of damages allegedly sustained by plaintiffs due to lost profits. We affirm as modified.

The facts relevant to this appeal are as follows. Dennis Walker is the president and principal owner of several El Fredo Pizza restaurants in Omaha, Nebraska. Walker has been in this business in Omaha since 1972, and his partner is Fred Lennon, who operates El Fredo Pizza restaurants in Sioux City, and who has been in the business for more than 20 years. Walker and Lennon had a policy of incorporating their restaurants separately, even if they were in the same city.

In 1973, at which time he successfully operated one El Fredo Pizza restaurant in Omaha, Walker planned to open a new El Fredo branch on Center Street, and needed to purchase a pizza oven for the new location. Walker desired to purchase the oven from Roto-Flex, as a Roto-Flex oven in Fred Lennon's restaurant in Sioux City had performed favorably for many years, and Lennon recommended it. Walker negotiated with Kiesel, an agent of Roto-Flex, and a contract was entered into on September 1, 1973, under which Walker purchased a "Pizza Oven Special" for $4,802.60, exclusive of shipping and installation charges. The contract was signed by Walker as president of El Fredo Pizza, Inc., as the new restaurant, to be formally known as Center Street Pizza, Inc., was not yet officially incorporated. Subsequently, however, the contract was orally assigned to Center Street Pizza, Inc., which paid for the oven.

The oven was installed on October 22, 1973, and problems immediately ensued. Although the evi-

dence was voluminous on this point, suffice it to say that the oven did not bake pizzas properly because of uneven heating. In order to fully bake a pizza, a two-step process would have to be utilized; first the pizza was baked in a pan, and then the pan had to be removed to permit the crust to finish baking. Constant monitoring of the oven was required, and delays occurred in serving customers. Roto-Flex was notified of the problem, suggestions were made, and a Roto-Flex employee attempted to fix the oven in February 1974. The oven, however, continued to bake pizzas improperly, despite Roto-Flex' attempts to remedy the problem, and despite Center Street Pizza's endeavor to follow exactly the procedures used in the Sioux City operation, where a similar Roto-Flex oven worked properly. When the oven continued to malfunction, Center Street Pizza removed and replaced the oven in November 1974, advising Roto-Flex of that fact. After the Roto-Flex oven was replaced with an oven from a different company, Center Street Pizza's problems in regard to baking pizzas disappeared.

With respect to damages, testimony by plaintiffs' witnesses indicated that Center Street Pizza had incurred increased labor costs during the time the Roto-Flex oven was used because the oven required constant monitoring, and additional employees were necessary due to the defect in the oven. Walker and Lennon testified that in the pizza industry in general, but particularly in El Fredo Pizza operations, labor costs are usually 21 to 22 percent of the total sales. They testified that while the Roto-Flex oven was in operation, labor costs were 27 to 28 percent of total sales, and that when the oven was replaced labor costs dropped to the expected 21 to 22 percent figure. They further stated that the pizza retail business is one where "instant maturity" is the norm, meaning that after the first several months of operation, revenue and profits will remain approximately the

same thereafter, with only small increases likely in the future. Monthly operating statements of Center Street Pizza were admitted in evidence, and these statements reflected the labor costs referred to above, as well as the fact that the total sales of Center Street Pizza increased by approximately 20 percent in the year after the Roto-Flex oven was replaced. A more detailed analysis of the evidence in regard to damages will be hereinafter set forth.

Roto-Flex first contends that the trial court erred in permitting El Fredo Pizza, Inc., to remain as a party in this action because the evidence showed that it had no interest herein. El Fredo Pizza, Inc., was initially named as a plaintiff because there was a question as to whether it had in fact assigned the oven contract to Center Street Pizza, Inc. The evidence was undisputed, however, that the contract had in fact been assigned, and therefore it is clear that El Fredo Pizza has no interest in the action, and is not entitled to judgment in its favor. As assignee of the contract and purchaser of the oven, only Center Street Pizza had an interest in the action. Therefore the judgment below should be reversed insofar as it is in favor of El Fredo Pizza as well as Center Street Pizza. Although El Fredo Pizza should have been dismissed as a plaintiff at the close of the evidence, the error in this respect did not prejudice Roto-Flex. The appropriate remedy under the particular facts of this case is not, as Roto-Flex suggests, to reverse the entire judgment, but only to reverse the judgment insofar as it is in favor of El Fredo Pizza. The error did not result in the jury being confused or misled, and no additional award was made because El Fredo Pizza remained a plaintiff. As a practical matter, the error had no effect in this case with respect to the judgment in favor of Center Street Pizza. No judgment shall be reversed or affected by reason of any error or defect in the

proceedings which does not affect the substantial rights of the adverse party. § 25-853, R. R. S. 1943.

Roto-Flex next contends that the evidence was insufficient to submit the issue of implied warranty of fitness of the oven for a particular purpose to the jury because the evidence did not show that Center Street Pizza had relied on Roto-Flex' skill or judgment in purchasing the oven. Two implied warranties provided for in the Uniform Commercial Code are relevant to this case. Under section 2-314, U.C.C., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. In order for goods to be merchantable under section 2-314, they must be at least such as are fit for the ordinary purposes for which such goods are used. Under this implied warranty, no reliance upon the seller need be shown. Under section 2-315, U.C.C., a warranty of fitness for a particular purpose is implied where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. See, Ruskamp v. Hog Builders, Inc., 192 Neb. 168, 219 N. W. 2d 750 (1974); Larutan Corp. v. Magnolia Homes Manuf. Co., 190 Neb. 425, 209 N. W. 2d 177 (1973).

In the present case, the special verdict form submitted by the court did not require the jury to indicate which warranty, if any, it found applicable, as both kinds of warranties were referred to in one question; and the record does not disclose which warranty the jury found to apply, or whether it found both to be applicable. There can be no question that the evidence was sufficient to submit the issue of implied warranty of merchantability to the jury, and Roto-Flex does not argue to the contrary. Roto-Flex contends only that there was not sufficient

evidence of reliance on the part of Center Street Pizza as required under section 2-315, U.C.C.

Roto-Flex' argument essentially is that Center Street Pizza did not rely on Roto-Flex' skill or judgment in buying the oven, but relied on the judgment of Fred Lennon, who recommended the Roto-Flex oven because his experience with a similar oven had been favorable. This argument misses the mark. Comment 1 to section 2-315, U.C.C., provides that whether or not the warranty of fitness for a particular purpose arises in any individual case "is basically a question of fact to be determined by the circumstances of the contracting. Under this section the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists. The buyer, of course, must actually be relying on the seller." If anything, the fact that Center Street Pizza went to Roto-Flex to purchase an oven because of Lennon's knowledge of past success with a similar oven underscores the fact that Center Street Pizza was relying on Roto-Flex' skill to furnish suitable goods for its business. The testimony indicated that Roto-Flex ovens are custom built for Roto-Flex customers, and Roto-Flex was aware of the particular purpose for which the oven was required in this case. Under the circumstances of this case, the evidence was clearly sufficient to raise the factual question of reliance under section 2-315, U.C.C., and it was proper to submit that question to the jury. It is only when the facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom that the trial court must decide the question as a matter of law and not submit it to the jury. Huskinson v. Vanderheiden, 197 Neb. 739, 251 N. W. 2d 144 (1977). Roto-Flex in effect desires

a directed verdict on the issue of liability under an implied warranty of fitness under section 2-315, U.C.C. "A motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence." Jensen v. Shadegg, 198 Neb. 139, 251 N. W. 2d 880 (1977). Under these standards, it was proper for the trial court to submit the issue of reliance under section 2-315, U.C.C., to the jury in this case, and Roto-Flex' contention to the contrary is without merit.

The principal issue raised in this case is whether the evidence was sufficient to permit Center Street Pizza to recover damages for lost business profits it allegedly incurred due to the defect in the oven. "Where the seller of goods has breached a warranty with respect thereto, the purchaser may recover consequential damages proximately resulting from the seller's breach." Shotkoski v. Standard Chemical Manuf. Co., 195 Neb. 22, 237 N. W. 2d 92 (1975). Under section 2-715, U.C.C., which provides for the recovery of consequential damages resulting from the seller's breach, such damages "need not be proved with mathematical certainty, but the evidence must be sufficient to enable the trier of fact, in this case the jury, to estimate with a reasonable degree of certainty and exactness the actual damages. * * * It is the duty of the District Court to refrain from submitting to the jury the issue of damages where the evidence is such that it cannot determine that issue without indulging in speculation and conjecture." Shotkoski v. Standard Chemical Manuf. Co., *supra*. Lost profits, proximately caused by a seller's breach of warranty, are consequential damages which may be recovered under section 2-

715, U.C.C., if proof of such loss is sufficient. National Farmers Organization, Inc. v. McCook Feed & Supply Co., 196 Neb. 424, 243 N. W. 2d 335 (1976); Lewis v. Mobil Oil Corp., 438 F. 2d 500 (8th Cir., 1971); White and Summers, Uniform Commercial Code, § 10-4, p. 319 (1972).

The only question Roto-Flex raises with respect to the recovery of consequential damages for lost profits under section 2-715, U.C.C., in this case is whether the evidence of lost profits was such that the jury could ascertain actual damages with a *reasonable degree of certainty.* Roto-Flex contends that it was not, and that on the evidence presented the jury could only reach a conclusion with respect to damages by relying on speculation and conjecture.

Roto-Flex cites the general rule that lost profits of a new business may not be recovered because such damages are too speculative and conjectural. See 22 Am. Jur. 2d, Damages, § 173, p. 245. The rule that lost profits from a business are too speculative and conjectural to permit the recovery of damages therefor, however, "is not a hard and fast one, and loss of prospective profits may nevertheless be recovered if the evidence shows with reasonable certainty *both* their *occurrence* and the *extent* thereof. * * * Uncertainty as to the *fact* of whether any damages were sustained at all is fatal to recovery, but uncertainty as to the *amount* is not." (Emphasis in original.) Fisher v. Hampton, 44 Cal. App. 3d 741, 118 Cal. Rptr. 811 (1975). See, also, Earle M. Jorgensen Co. v. Tesmer Manuf. Co., Inc., 10 Ariz. App. 445, 459 P. 2d 533 (1969); Barbier v. Barry, 345 S. W. 2d 557 (Tex. Civ. App., 1961); Reefer Queen Co., Inc. v. Marine Constr. & Design Co., 73 Wash. 2d 774, 440 P. 2d 448 (1968); Boring v. Geis Irrigation Co., 547 P. 2d 988 (Okla. App., 1975); Biothermal Process Corp. v. Cohu & Co., 119 N.Y.S. 2d 158 (S. Ct. N.Y., 1953), reversed on other grounds, 283 App. Div. 60, 126

N.Y.S. 2d 1 (1st Dept., 1953), affirmed 308 N.Y. 689, 124 N. E. 2d 323 (1954); 25 C.J.S., Damages, § 42 b, p. 741. Therefore, although in many, if not most, instances lost profits from a new business are too speculative and conjectural to permit recovery of damages, "where the evidence is available to furnish a reasonable certain factual basis for computation of probable losses, recovery of lost profits cannot be denied, even though a new business venture is involved." Earle M. Jorgensen Co. v. Tesmer Manuf. Co., Inc., *supra.* In prior Nebraska cases involving recovery of damages for lost profits, the focus has been on whether it was proven that it is reasonably certain such profits would have been realized, and that the lost profits can be ascertained and measured from the evidence introduced with reasonable certainty. Such lost profits must not be speculative, remote, or imaginary, but must be established with reasonable certainty by the evidence. K & R, Inc. v. Crete Storage Corp., 194 Neb. 138, 231 N. W. 2d 110 (1975); National Farmers Organization, Inc. v. McCook Feed & Supply Co., *supra;* Shotkoski v. Standard Chemical Manuf. Co., *supra.*

Under the above authorities, the crucial issue in this case is not so much whether Center Street Pizza was a new business, but rather whether damages for lost profits were proven with reasonable certainty. Both parties in this case have set forth arguments with respect to whether Center Street Pizza was a new business, or whether it was merely an extension or new branch of an established business. This question is not decisive. The fact that a business is new is relevant only insofar as that fact affects the certainty of proof of lost profits; it does not establish as a matter of law that damages for lost profits may not be recovered. Therefore we turn to the question of whether damages for lost profits were proven with reasonable certainty in the present case.

It should first be noted that of the $17,500 awarded

for damages in this case, only approximately $12,000 can be attributed to damages for lost profits, as the purchase price of the oven, shipping expenses, and traveling expenses of a Roto-Flex employee, all paid by Center Street Pizza, amounted to nearly $5,400. Therefore, the specific question presented is whether an award of damages of approximately $12,000 for lost profits can be sustained by the evidence.

Before referring to detailed evidence, it is important to note several factors present in this case which are relevant to the issue of damages for lost profits in general: (1) The evidence was undisputed that the retail pizza restaurant business is an "instant maturity" business, one where, unlike many other business enterprises, the success or failure of the business can be quickly ascertained, and where a lengthy period of losses is not the norm before the business becomes profitable; (2) Center Street Pizza did not go out of business, and therefore records exist which show performance of the restaurant both during and after the period the defective oven was in operation; (3) even if Center Street Pizza is considered to be a new business, the history of other El Fredo Pizza restaurants owned by the same individuals and operated in the same manner as Center Street Pizza was operated is relevant in regard to the issue of whether a defective oven would reduce profits; (4) Center Street Pizza sought damages for lost profits not only on the basis that sales would have been greater if the Roto-Flex oven had not been defective, but also on the basis of increased costs caused by the defective oven, such increased costs resulting in decreased profits even if the oven did not cause a loss of gross revenue; and (5) evidence regarding lost profits adduced by Center Street Pizza consisted of business records as well as oral testimony, a fact which is critical under K & R, Inc. v. Crete Storage Corp., *supra*. With these fac-

tors in mind, it is appropriate to review the monthly operating statements of Center Street Pizza, which were introduced in evidence.

The monthly operating statements reflect the total sales and total costs of Center Street Pizza for the period the Roto-Flex oven was in operation, and for a period of the same duration after that oven was replaced with an oven that worked properly. The costs were broken down into five categories, one category being labor costs. We have reviewed these records to determine whether they, in conjunction with the testimony of witnesses as set forth above, constituted sufficient evidence to prove with reasonable certainty that Center Street Pizza suffered lost profits. We have compared records of the period the Roto-Flex oven was in operation with records of a period of the same duration after that oven was replaced; and have also compared relevant periods excluding a short period of time after each oven was installed so as to avoid any possible disparities resulting from the initial time it may take to adjust an oven and become familiar with it. Regardless of which comparison is used, the results are roughly similar, and the following figures reflect an average of the results obtained under the two comparisons.

First, from an examination of the records with respect to increased labor costs, it appears that labor costs while the Roto-Flex oven was in operation were 28 percent of sales, but dropped to 21 percent of sales after that oven was replaced. Had labor costs been at 21 percent of sales while the Roto-Flex oven was in operation, Center Street Pizza would have had approximately $8,000 more profit on the same sales it made during the Roto-Flex period. During the period after the Roto-Flex oven was replaced, it appears Center Street Pizza had a profit rate of approximately 6 percent of sales. Had Center Street Pizza had the same profit rate during the Roto-Flex period, its profit would have been approximately

$8,000. Center Street Pizza, in fact, lost approximately $350 during the Roto-Flex period, and this figure excludes losses in the first 2 months for the reason that a new pizza restaurant, even if an instant maturity business, will probably suffer initial losses. It can be seen that under either approach, whether one refers to labor costs or profit margins, the records indicate that Center Street Pizza had diminished profits of approximately $8,000 during the period the Roto-Flex oven was in operation due to increased labor costs. It should be noted that this computation of loss does not rest on an assumption that the Roto-Flex oven caused decreased sales, but is based on increased costs, which reflect lost profits, even assuming that the Roto-Flex oven did not cause a loss of gross revenue.

The monthly operating statements therefore support the testimony in this case that labor costs in El Fredo Pizza restaurants are about 21 percent of sales when the restaurant is being operated normally and properly. The testimony in this case was that there were no changes in the operation of Center Street Pizza other than the replacement of the Roto-Flex oven. There was evidence that additional employees had to be hired due to the inefficiency and defective nature of the Roto-Flex oven. We conclude that there was sufficient evidence to permit the jury to conclude with reasonable certainty that Center Street Pizza suffered lost profits due to increased labor costs attributable to the defective oven, at least to the extent of $8,000. Therefore we conclude it was proper to submit that issue to the jury.

The records also reflect that in the relevant period after the Roto-Flex oven was replaced, the sales of Center Street Pizza increased by approximately $24,000, or by about 20 percent. Center Street Pizza attributes this increase as being solely due to the Roto-Flex oven being replaced, relying on its evi-

dence that the pizza restaurant business is an instant maturity business, and arguing that therefore the sales in the relevant period after the Roto-Flex oven was replaced reflect what the sales would have been had the Roto-Flex oven not been defective. Center Street Pizza contends that in addition to damages for increased labor costs, the jury could properly have awarded it damages for lost profits due to decreased revenue. It contends that it is entitled to 49 percent of the $24,000 difference in sales as lost profits, arriving at the percentage by computing that food and labor costs are normally 51 percent of total sales, and concluding therefore that 49 percent is the appropriate profit margin. We do not find this argument persuasive, and for the following reasons conclude that the evidence was not sufficient to permit the jury to award Center Street Pizza damages for lost profits due to decreased revenue.

We do not believe the evidence supports Center Street Pizza's position that 49 percent is the proper profit margin on the alleged decreased sales. Its own records indicate that profits after the Roto-Flex oven was replaced were 6 percent of total sales, as the total percentages of the various categories of costs was 94 percent. Therefore 6 percent of $24,000, or about $1,500, is the most Center Street Pizza could recover for lost profits on decreased revenue. It should also be noted that Center Street Pizza's argument is essentially that had the Roto-Flex oven worked properly, it would have had the same revenue and profits during the Roto-Flex period as it subsequently did. In the relevant period after the Roto-Flex oven was replaced, Center Street Pizza's profits were about $9,000 to $10,000. Under Center Street Pizza's own theory that it would have done as well during the Roto-Flex period as it did during the relevant time period thereafter had the oven not been defective, $10,000 is the maximum amount it could recover for lost profits, including

both increased labor costs and lost revenue. This figure is in accord with that reached by adding the $8,000 increased labor costs, as computed above, to the $1,500 loss of profits on the alleged decreased revenue.

In examining the record, however, we do not believe that the evidence supports the view that the defective Roto-Flex oven was the sole cause of the alleged decreased sales. The evidence that Center Street Pizza is an instant maturity business is not, standing alone, sufficient to permit the jury to conclude that the defective oven resulted in decreased sales. Although there was some evidence that customers were dissatisfied with the pizza baked in the Roto-Flex oven, such evidence was scanty at best. In the absence of more persuasive evidence, such as that other El Fredo Pizza restaurants in fact did not have significant increases in sales after a certain period of operation, we find that it would be speculative for a jury to conclude that Center Street Pizza would have sold as much pizza when the Roto-Flex oven was in operation as it did subsequently. Although sales did increase after the Roto-Flex oven was replaced, the increase was not so dramatic as to itself imply the defective oven caused lost revenue, and there are simply too many other factors such as location, increased public awareness of a restaurant, etc., to permit a jury to conclude with reasonable certainty that the oven caused reduced sales. Therefore we believe damages cannot be recovered for lost profits allegedly caused by decreased revenue because they were not proven with reasonable certainty.

We conclude that the evidence was sufficient to prove with reasonable certainty that Center Street Pizza suffered lost profits due to increased labor costs, but that it was not sufficient to prove lost profits from decreased revenue. In a post-trial motion, Roto-Flex moved the trial court to modify and remit

the amount of damages set out in the verdict in this case. We believe that the trial court should have granted such remittitur because the evidence does not sustain an award of $12,000 for lost profits in addition to the approximate $5,500 award for the costs pertaining to the defective oven. This court has the authority to direct a remittitur to be filed in such cases. See, Mangiameli v. Ariano, 126 Neb. 629, 253 N. W. 871 (1934); Curran v. Union Stock Yards Co., 111 Neb. 251, 196 N. W. 135 (1923). For the reasons set forth above, we find that the evidence was sufficient with reasonable certainty, to sustain an award of $8,000 for lost profits due to increased labor costs, but was not sufficient to sustain an award for more than that amount. Therefore, we direct a remittitur be filed reducing the award by $4,000, from $17,500 to $13,500. In all other respects, the judgment is affirmed.

AFFIRMED AS MODIFIED.

BOSLAUGH, J., dissenting in part.

I dissent from that part of the opinion which directs that a remittitur be filed. A remittitur should be ordered only where the amount of the recovery which was excessive is subject to exact determination. See Lundt v. Parsons Constr. Co., 181 Neb. 609, 150 N. W. 2d 108.

WHITE, C.J., and CLINTON, J., join in this dissent.