**GILLETTE DAIRY, INC.,**
**Appellant-Cross Appellee,**

v.

**MALLARD MANUFACTURING CORPO-**
**RATION, Appellee-Cross Appellant.**

Nos. 82–1789, 82–1807.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1983.

Decided May 24, 1983.

Rehearing Denied Aug. 11, 1983.

352

Baylor, Evnen, Curtiss, Grimit & Witt, Lincoln, Neb., for appellee-cross appellant.

Law Offices of Cobb & Rehm, P.C., Kenneth Cobb and Rodney J. Rehm, Lincoln, Neb., for appellant-cross appellee.

Before LAY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This action involves a diversity suit for breach of express and implied warranties in connection with the sale, by Mallard Manufacturing Corp. (Mallard) to Gillette Dairy, Inc. (Gillette), of a conveyor system. On September 3, 1981, a separate trial was held to determine the applicable statute of limitations and the legal propriety of the plaintiff's negligence claim. The district court held that the applicable statute of limitations was the products liability statute of limitations found in Neb.Rev.Stat. § 25–224 (Reissue 1979), and that the Uniform Commercial Code statute of limitations found in Neb.Rev.Stat. § 2–725 (Reissue 1980) was not the controlling law in this case. The district court further found that a negligence claim could not lie in this case because the defendant's duty was specifically governed by contract; thus, the plaintiff must rely on its breach of warranty claim to obtain relief. A jury trial followed in which defendant Mallard was found liable for the repair and replacement of the defective conveyor system in the amount of $40,-805. Both Gillette and Mallard appeal from the judgment.

On appeal, Gillette alleges that the district court's erroneous instructions caused the jury to assess an insufficient amount of damages. Mallard contends that the district court erred in its determination on the statute of limitations issue and asserts that this action is time-barred under the Uniform Commercial Code's four year period of limitations on suits involving a breach of a contract of sale. We find it unnecessary to reach Gillette's allegations of error because we agree with Mallard that this action is time-barred under the UCC statute of limitations. We accordingly reverse and remand with directions to the trial court to enter judgment for the defendant.

In the spring of 1975, Gillette decided to purchase a gravity conveyor system for use in its freezer storage facility. The storage facility was used primarily for storing ice cream which was to be moved across the gravity conveyor system in lots of up to 360 gallons placed on pallets. Gillette solicited bids for a conveyor system from various companies and ultimately accepted a bid from an intermediary, A–1 Fork Lift. The bid was based on listed specifications and a rough drawing submitted to A–1 by Gillette. A–1, in turn, submitted the specifications and the drawing to Mallard. Upon acceptance of the bid by Gillette, Mallard sent an acknowledgement order to Gillette which included warranty disclaimer and limitations of liability language on the back of the form. The system was delivered directly to Gillette by Mallard. Upon the arrival of the system, a Mallard factory representative, Richard DeFoe, came to Gillette and assisted in setting up the conveyor

system. While assisting at Gillette, DeFoe was asked whether the system could withstand forklift loading and he assured Gillette that it could and further stated that the system could withstand twice the weight load that Gillette would put on it. Shortly after this system was installed it was destroyed by fire.

Gillette decided to replace the conveyor system and contacted A–1 Fork Lift to procure a bid on another system. The same procedure took place on the second system as the first. The second system was delivered in March of 1976, and was installed, with DeFoe's help, during the spring and summer of 1976. When the storage facility was cooled down in October of 1976 to begin storage operations, Gillette began experiencing difficulties with the conveyor system. Gillette contacted Mallard about its difficulties with the new system and implemented some of Mallard's suggestions on how to deal with the problems. However, when nothing seemed to correct the problems with the system, Gillette, in 1978, installed another conveyor system. Gillette filed suit on May 15, 1980, alleging negligence and breach of express and implied warranties. After disallowance of the negligence issue, the focus at trial was on whether implied or express warranties for the equipment were given and, if so, whether Mallard's attempt to disclaim such warranties was effective. The jury found that express and implied warranties existed, and assessed damages in the amount of $40,805 for replacement of the defective conveyor system.

■ The threshold issue on appeal is whether the district court erred in holding that Nebraska law did not require the application of § 2–725, the UCC statute of limitations on contracts for sale, to an action brought for breach of express or implied warranties. The district court held that Gillette's breach of warranty claims fall within the purview of both statutes of limitations because § 2–725 applies general-

ly to all breaches of contracts for sale, including breaches of warranties; and, § 25–224 applies to all product liability actions, including an action based on the theory of breach of warranty. Under § 2–725 this action would be time-barred because the complaint was not filed within four years from date of delivery. The court also specifically found that neither statute was more specific than the other. The court then stated that two principles of statutory construction would resolve this apparent conflict. First, if two conflicting statutes of limitations are equally applicable, the longer period should govern. *Nebraska Mil-Nic, Inc. v. Hall County,* 187 Neb. 656, 193 N.W.2d 450 (Neb.1972), affirmed as amended, 188 Neb. 345, 196 N.W.2d 522 (Neb.1972).[1] Second, in the case of conflicting provisions in two different statutes, the last in point of time prevails. *Stoller v. State,* 171 Neb. 93, 105 N.W.2d 852, 857. (Neb.1960). The district court concluded that these two principles of statutory construction required a finding that § 25–224 was the "last expression of legislative will" and was the controlling law in this case.

■ Before entering into an analysis of the issue, it is appropriate to reiterate the well-established general legal standards governing a district court's determination of state law. *See R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 821 (8th Cir.1983). In diversity cases such as the instant case, in which state law governs the issues, the district court's interpretation of that local law is entitled to great weight. *Hunter v. United States,* 624 F.2d 833, 837 (8th Cir.1980). However, this court is not bound by a district court's interpretation of state law and must reverse if we find that the district court has not correctly applied local law, or if such interpretation of state law "is fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Ancom, Inc. v. E.R. Squibb & Sons, Inc.,* 658 F.2d 650, 654 (8th Cir.1981). In reviewing the district court's determination of Ne-

---

1. We do not read *Nebraska Mil-Nic* as standing for the proposition cited by the district court. However, as that proposition is irrelevant to our determination, we find such error to be harmless.

braska law in the instant case, our task "is not to formulate the legal mind of the state, but merely to ascertain and apply it." *Aguilar v. Flores,* 549 F.2d 1161, 1163 (8th Cir.1977). Generally, we look to the decisions of the highest court of the state as the final authority on state law. *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940). "When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *Id.* at 236, 61 S.Ct. at 183.

■ In applying the above standards to the instant case, we feel that Nebraska law mandates the application of § 2–725, the UCC statute of limitations, to a breach of warranty action brought solely to recover an economic loss to the plaintiff. Upon careful review of several quite recent decisions of the Nebraska Supreme Court, we find that the district court incorrectly interpreted state law on the question of whether a breach of warranty claim falls within the purview of both the UCC statute of limitations, § 2–725, and the Nebraska Products Liability statute of limitations, § 25–224. We hold that under current Nebraska law a breach of warranty claim, alleging only economic loss, is governed solely by the UCC statute of limitations found in § 2–725.

The earliest reference by the Nebraska Supreme Court to the conflict between the UCC and expanding the application of the doctrine of products liability to breach of warranty claims is found in *Hawkins Construction Co. v. Matthews Co.,* 190 Neb. 546, 209 N.W.2d 643, 653 (Neb.1973) where the

court stated that "[i]f the loss is merely economic, the Uniform Commercial Code has given the purchaser an ample recourse under the particular provisions and requirements of the Code." This position was affirmed in *Grand Island School District v. Celotex Corp.,* 203 Neb. 559, 279 N.W.2d 603, 609 (Neb.1979), where the court held that an action for breach of warranty is subject to the statute of limitations found at § 2–725 of the UCC. More recently in *Moore v. Puget Sound Plywood,* 214 Neb. 14, 17, 332 N.W.2d 212 (1983), the court held that if a plaintiff knew of the defect prior to the tolling of the period of limitations but failed to act until after it had tolled, such a claim is time-barred under § 2–725.

■ More recently, the Nebraska Supreme Court has removed all doubt, if any existed, as to the distinction between economic loss in contract cases and property damage in products liability cases. In *National Crane Corp. v. Ohio Steel Tube Co.,* 213 Neb. 782, 790, 332 N.W.2d 39 (1983), the court held that the purchaser of a product pursuant to contract cannot recover economic losses from the seller manufacturer on a products liability claim in the absence of physical harm to persons or property caused by the defective product.[2] The court added that "Neb.Rev.Stat. § 25–21.–180 (Reissue 1979) defines a product liability action as an action brought 'for or on account of personal injury, death, or property damage caused by' the product. The statute refers only to physical harm, not to economic loss." *Id.* at 788, 332 N.W.2d 39. Thus, the *National Crane* case makes clear what is the most current state law defini-

---

**2.** The jury also returned a verdict by special interrogatory, finding that Gillette was not entitled to recover consequential damages for the ice cream allegedly damaged by the faulty conveyor system, due to the limitation of liability clause contained in the contract of sale. Although this issue was not raised by either party on appeal, we find that the Nebraska Supreme Court would designate the damage to the ice cream as lost profits, which may be recovered under § 2–715 of the Uniform Commercial Code. *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.,* 199 Neb. 697, 261 N.W.2d 358 (Neb.1978). In *El Fredo Pizza,* the court held that "[l]ost

profits, proximately caused by a seller's breach of warranty, are consequential damages which may be recovered under § 2–715, U.C.C., if proof of such loss is sufficient." *Id.* 261 N.W.2d at 363. Thus, we construe the claim for damage to the ice cream as only seeking recovery for economic loss as "[e]conomic loss includes cost of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits." *R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 829 n. 11 (8th Cir.1983).

tion of a products liability action. It is obvious and regrettable that the district court did not have the benefit of the *National Crane* case prior to making its determination on the statute of limitations; however, we are bound to ascertain and apply state law as it exists at the time of our decision, *Aguilar v. Flores, supra,* 549 F.2d at 1163. Consequently, we find that the judgment for the plaintiff must be reversed and judgment must be entered for the defendant.