DOLOMITE LIMESTONE PRODUCTS CO. *v.* KENNEDY-VAN SAUN MANFG. & ENGINEERING CORPORATION.

1. FRAUD—DAMAGES—MEASURE OF DAMAGES FOR MISREPRESENTING CAPACITY OF MACHINE SOLD.

In an action for damages for false representations as to the capacity of a machine sold by defendant to plaintiff for manufacturing pulverized limestone, the measure of plaintiff's damages, if any, is the difference between the value of the machine had it been as represented and its true value when delivered to plaintiff.

2. DAMAGES—DAMAGES SUSCEPTIBLE OF PROOF MAY NOT BE BASED ON SPECULATION.

While a wrongdoer may not escape liability because of the impossibility to ascertain the extent of the wrong, where the damage is susceptible of definite proof or of estimation by those having knowledge, it is the duty of the plaintiff to submit such proof to the jury to aid them in arriving at a verdict, which must not be based on pure speculation.

3. SAME—NEW TRIAL GRANTED WHERE DAMAGES SUSCEPTIBLE OF PROOF RATHER THAN REDUCING JUDGMENT BY REMITTITUR.

Where, in an action for damages, the measure of damages was the difference between the true value of a machine and its value had it been as represented, and the court so instructed the jury, but they misunderstood and returned an excessive verdict based on loss of profits, and the actual damages involved are susceptible of proof, the case must be reversed and new trial granted rather than reducing the judgment by remittitur, as is allowable where damages are not susceptible of actual proof.

Error to Muskegon; Vanderwerp (John), J.   Submitted November 16, 1927.   (Docket No. 144.)   Decided January 3, 1928.

Case by the Dolomite Limestone Products Company

---

[1]Fraud, 27 C. J. § 243; [2]Damages, 17 C. J. § 90; [3]Appeal and Error, 4 C. J. § 3137.

against the Kennedy-Van Saun Manufacturing & Engineering Corporation for breach of warranty on the sale of machinery.     Judgment for plaintiff.     Defendant brings error.     Reversed.

*Macdonald & Macdonald,* for appellant.

*Bunker & Rogoski* and *R. Glen Dunn,* for appellee.

SHARPE, J.     The plaintiff is engaged in the manufacture of pulverized limestone for agricultural purposes and as an asphalt filler.     The defendant manufactures mills or machines for that purpose.     On April 24, 1924, a contract in writing was entered into for the purchase by plaintiff of one of defendant's mills described as a "4' x 8' Airswept Tube Mill," at the price of $6,268.     It was delivered on or about June 1st, and the first payment made thereon.     On June 29, 1925, there was default in payment, and defendant brought replevin and recovered possession.     On July 1, 1925, plaintiff brought this action for damages claimed to have been suffered by it by reason of false representations alleged to have been made to it which induced the purchase.     It had verdict for $9,051.50. On defendant's motion for a new trial, the court required plaintiff to remit the sum of $2,500, and, on this being done, a judgment was entered in its favor for the balance of $6,551.50.     Defendant seeks review by writ of error.

Counsel are agreed that the measure of plaintiff's damages, if any, was the difference between the value of the mill had it been as represented and its value when delivered to plaintiff.     The trial court so instructed the jury.

The representations on which plaintiff claims it relied are thus stated by its counsel:

"The representations made were that the mill manufactured by the defendant was suitable to plaintiff's

business; that it was designed and equipped to manufacture at a single operation asphalt filler and agricultural limestone; that defendant's mill was capable of producing four tons or more per hour of the filler of the required fineness, when not engaged in providing chips, and was capable of producing 3 and 8/10 tons per hour of the filler of the required fineness."

It offered proof that "the greatest amount per hour that it would produce was about a ton and a half," and its president, Lance Hanley, was permitted to testify, over defendant's objection, that he had contracts under which he might have sold the larger output, and that there "would have been a profit of $6,450 for the period that these orders covered." He was then asked: "On the business of the output that you actually received what was the loss?" and was permitted, over objection, to answer: "The loss on filling these orders was $2,601.50."

It will be observed that the verdict was exactly the sum of these two amounts. Counsel for plaintiff concede that it was not entitled to recover for loss of profits, but insist that the evidence was admissible and might be considered by the jury in fixing the damages to which it was entitled as above stated. That the jury either did not understand the instructions of the court or failed to follow them is apparent. In personal injury cases, where proof cannot be submitted of the damages which should be allowed for pain and suffering, both the trial court and this court have sought to avoid a retrial by permitting plaintiffs to accept a lesser sum than that found by the jury, when it is clearly excessive, and entering judgment therefor. But this case does not belong to that class. The witness, an engineer of experience, might have been able to express an intelligent opinion, based upon the output which was promised and that which could be had, as to the difference in value of a mill producing the

former and the latter.    The testimony of manu-
facturers of other mills could doubtless have been
secured and definite information submitted to the jury
to aid them in their determination.    It is true, as
claimed by plaintiff's counsel, that a "wrongdoer may
not escape liability because of the impossibility to
ascertain the extent of his wrong."    But in all cases
where the damage is susceptible of definite proof or
of estimation by those having knowledge, it is the duty
of the plaintiff to submit such proof to the jury to aid
them in arriving at a verdict which must not be based
on pure speculation.    The judgment rendered was
more than $200 in excess of the cost price of the mill.
It surely had some market value when delivered to
plaintiff.

The judgment is reversed and set aside, with costs
to defendant, and a new trial ordered.

FLANNIGAN, C. J., and NORTH, FELLOWS, WIEST,
CLARK, MCDONALD, and BIRD, JJ., concurred.