LYLE GEE AND DARLENE GEE, APPELLEES, V.
DINSDALE BROTHERS, INC.,
A NEBRASKA CORPORATION, APPELLANT.

298 N.W.2d 147

Filed October 31, 1980. No. 42968.

Joseph Ginsburg of Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon, and Steven M. Curry of Sampson, Curry & Hummel for appellant.

William A. Wieland of Healey, Brown, Wieland & Kluender for appellees.

Heard before BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The plaintiffs, Lyle and Darlene Gee, live on a farm 1 1/4 miles south of Palmer, Nebraska. Their home,

which was completed in the spring of 1963, was faced to the south and east to take advantage of prevailing spring and summer winds. When the plaintiffs built their home, the land across the road to the south and east was used for the production of alfalfa, wheat, and corn.

In the spring of 1965, the defendant, Dinsdale Brothers, Inc., began to construct cattle pens on this property. The feedlot now consists of 15 pens for feeding cattle, a loading pen, and a sick pen area. The pens are of random size but most of them are approximately 250 feet wide and 300 feet deep. Ordinarily, there are 2,500 to 3,500 cattle in the feedlot. The plaintiffs' home is within 1,000 feet of the feedlot.

After making complaints to a number of governmental agencies, the plaintiffs commenced this action. The plaintiffs sought temporary damages to their comfort and enjoyment of their property but did not seek permanent damages resulting from the operation of the feedlot which they alleged constituted a nuisance. Their complaints related to odors, dust, flies, and rodents coming from the feedlot. The jury returned a verdict for the plaintiffs in the amount of $50,000. The defendant appeals.

The principal assignments of error relate to the instructions. The defendant also claims that the trial court erred in admitting rebuttal evidence and that the verdict was excessive.

By instruction No. 6, the trial court advised the jury that, before the plaintiffs could recover, they were required to prove that the defendant's activities "were unreasonable under all of the attendant circumstances." The defendant contends that it was error not to repeat this element of unreasonableness in later instructions which stated that allowing manure, feedlot wastes, and dead animals to accumulate so that odors, dust, flies, and rodents would substantially and materially invade the plaintiffs' property might constitute a nuisance.

It is fundamental that instructions must be considered together and if, when considered as a whole, they state the law correctly, they are not erroneous. *Flanagin v. DePriest*, 182 Neb. 776, 157 N.W.2d 389 (1968). We find no error in the instructions challenged.

The defendant requested a number of instructions, some of which related to matters for which the plaintiffs could not recover. Generally, the trial court is not required to instruct negatively. It is sufficient if the jury is properly instructed as to matters for which the plaintiffs may recover. Where the trial court has instructed the jury affirmatively upon the issues presented by the pleadings and the evidence, it is unnecessary to instruct in a negative form. *High-Plains Cooperative Assn. v. Stevens*, 204 Neb. 664, 284 N.W.2d 846 (1979). There was no error in refusing the instructions requested by the defendant.

On rebuttal, the plaintiffs were allowed to introduce, over objection, the following testimony from the deposition of J. A. Dinsdale, an officer of the defendant corporation:

"Q. At the time, let's say, in '60 or '61, when you put in the windbreak and started building the lots, were you aware that the plaintiffs live across the road?

"A. I don't really care about the place. I never watched anything. They've done — I've never reported them for any irregularities. What happens to them is just fine.

"Q. So I take it as to who lived, that is not a factor?

"A. Not a factor, no. No.

"Q. You put it on your land where you felt it should go with regard to your business operation?

"A. Right."

The defendant contends this was improper rebuttal evidence and should have been excluded.

The deposition testimony had some relevance in that the defendant had attempted to show a compliance with good design requirements for feedlots including location with respect to housing areas. The deposition

testimony tended to rebut this evidence and show that the defendant was not concerned with the use which was being made of property adjacent to the feedlot.

The admission of rebuttal testimony is largely within the discretion of the trial court. *Cromer v. Farmland Service Coop, Inc.*, 198 Neb. 355, 252 N.W.2d 635 (1977). There was no abuse of discretion in the admission of the rebuttal evidence.

The verdict which was returned by the jury in this case was for a substantial amount. On the other hand, the plaintiffs' evidence will sustain a finding of substantial damage. The damage covered the period from April 28, 1972, until the time of trial. The plaintiffs' complaints centered on the odors, dust, flies, and rodents which had invaded their property since 1970.

The evidence shows there was a very severe odor and dust problem from about March until October or November caused by the animal wastes which accumulated in the feedlot. The pens were cleaned but once or twice a year. The rest of the time, the manure was packed into mounds in the pens. Liquid wastes drained into three lagoons or holding ponds where the wastes decomposed. Once each year, the liquid was pumped out of the ponds and the solids were hauled away. Dead stock were removed from the lot, but there was evidence that dead fetuses and calves were left in the pens to decompose.

The odor and the dust forced the plaintiffs to stay inside their house much of the time. After 3 days of a southeast wind, the odor would penetrate the house to the extent the clothes in the closets would have a bad odor. The odor was described as a sour, rotten manure odor.

Mrs. Gee testified that, "The dust blows out of that feedlot, you know, on an average probably three nights, at least three nights out of a week. Generally in the evening, but when it gets real bad it will come all day long. Like after six o'clock at night the kids can't go outside and play basketball, they just can't breathe,

you know, if they go outside and play basketball.

"And you close up the house and you try to keep the dust out, but like there again, the windowsills are always loaded with dust and this type of thing. It's annoying. It's very annoying. You can't plan anything because you don't know which way the wind is going to be blowing. You know, if it is blowing from the southeast the dust and odor are so bad that there's no way." She further stated: "It is heavy enough so that when you breathe your nostrils get to burning and you hurt if you breathe heavy." At times, the wind carries the dust a distance of several miles. One witness related that it was "dusty like a fog" in the area.

Speaking of the increase in flies, Darlene Gee testified: "[S]ince '70 they have been very thick, just thick, thick, thick. Thick on the sides of the house, thick on the sides of the shed, just thick everyplace. On the cars, inside the cars, inside the house." Photographs in the record show the extent of the fly problem around the Gee home. The flies were troublesome from April through November and the Gees employed sprays, traps, and an electric fly killer to attempt to reduce the problem. Despite their efforts, they were forced to continually clean and paint the fly-specked parts of their home.

There was similar evidence concerning the problem with rats.

In *Botsch v. Leigh Land Co.*, 195 Neb. 509, 239 N.W.2d 481 (1976), it was recognized that a rural home and a rural family, within reason, are entitled to the same relative protection as others. In that case, the evidence showed that odors generated by lagoons, together with the manure dust and insects resulting from the failure to remove manure from the feedlot, had rendered the plaintiffs' premises well nigh uninhabitable. We held that, even in an industrial or rural area, a business enterprise could not be conducted in such a manner as to materially prejudice a neighbor.

In this type of case there is no method which permits

a precise determination of the damages. The damages which may be recovered rest largely within the discretion of the jury. Upon the record in this case we are unable to say that the verdict was excessive.

The judgment of the District Court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., and CLINTON, J., not participating.