SETTELL'S, INC., A CORPORATION, APPELLANT, V. PITNEY BOWES, INC., A CORPORATION, APPELLEE.

305 N.W.2d 896

Filed May 22, 1981. No. 43466.

J. L. Krause for appellant.

Nelson & Harding, Robert D. Kinsey, Jr., and Tim Engler for appellee.

Heard before KRIVOSHA, C.J., McCOWN, WHITE, and HASTINGS, JJ., and RICHLING, District Judge.

HASTINGS, J.

This is an action by Settell's, Inc., a small commercial printer, to recover from Pitney Bowes, Inc., a manufacturer and seller of large commercial printing equipment, damages suffered by the plaintiff in connection with the lease and sale of an automatic collator. Settell's claimed damages for breach of express and implied warranties under the Uniform Commercial Code. The case was tried to a jury, and at the close of all the evidence the trial court sustained the defendant's motion for a directed verdict and dismissed Settell's claim. Settell's appealed, assigning as error the directing of a verdict in favor of Pitney Bowes; the refusal to direct a verdict in favor of Settell's; and the refusal to grant a new trial. We affirm the District Court ruling.

In March of 1976 Robert Settell, the president of the plaintiff company, met with two representatives of Pitney Bowes regarding the possible acquisition of an automatic collator. Mr. Settell determined that the company could not afford to purchase the collator outright for $11,995, so a leasing arrangement was decided upon as the form of acquisition. Pitney Bowes arranged to sell the collator to NBC Leasing Company,

which would in turn lease the machine to Settell's for a 7-year period at a monthly rate of $256.99. Shortly after the agreement was signed, Pitney Bowes delivered and installed the collator and gave employees of Settell's instructions on the operation of the machine. Settell's testimony was that they had problems with the machine from the day it was delivered and they were never able to complete even one commercial job from March 10, 1976, to December 1977, when they finally gave up trying to use the collator after nearly 300 attempts. After each of these aborted attempts, the employees of Settell's collated the jobs manually.

After December of 1977 Settell's made written demand upon Pitney Bowes for removal of the machine, return of all money paid, and for satisfaction of the NBC lease. Pitney Bowes refused to do so. Settell's refused to make any further payments under the lease.

Thereafter, NBC Leasing brought suit against Settell's to recover under the lease. On the eve of the trial, that lawsuit was settled, with Settell's agreeing to pay to NBC Leasing $15,730.61, an amount only $202.77 less than would be paid if Settell's had completed the 7-year lease.

The instant case was a suit filed by Settell's against Pitney Bowes, seeking damages for a breach of warranty as well as for recovery of the amount expended in settlement of the NBC Leasing case. In sustaining defendant's motion for a directed verdict, the trial court made the following statement: "I think the damages are uncertain. I think the plaintiff has failed as a matter of law to introduce evidence in which the jury could establish damages without indulging in speculation and pure conjecture.

"As to their other allegations, it's not necessary to decide whether other points, whether there was sufficient evidence on the other points such as adequate notice and breach of warranty and so forth. So I don't

see any point in getting into that. I seriously question whether there was adequate notice given in the breach of warranty but I am not relying on that in sustaining this motion so all right, the motion of the defendant is sustained. The case is dismissed."

The rule regarding directed verdicts is well settled: "A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom." *Krug v. Laughlin*, 208 Neb. 367, 371, 303 N.W.2d 311, 313 (1981).

A motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the verdict is sought, and that party is to be given the benefit of every inference which can reasonably be drawn. *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978).

When the purchaser of goods under the Uniform Commercial Code claims a breach of warranty, he must not only prove the warranty and the breach thereof; in addition, "[t]he purchaser has the burden of proving both the cause of the loss and the extent thereof. § 2-715, U.C.C., comments 4 and 5. Damages need not be proved with mathematical certainty, but the evidence must be sufficient to enable the trier of fact, in this case the jury, to estimate with a reasonable degree of certainty and exactness the actual damages. [Citation omitted.] It is the duty of the District Court to refrain from submitting to the jury the issue of damages where the evidence is such that it cannot determine that issue without indulging in speculation and conjecture." *Shotkoski v. Standard Chemical Manuf. Co.*, 195 Neb. 22, 28-29, 237 N.W.2d 92, 97 (1975).

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods as accepted and the value they would have had if they had been as war-

ranted, unless special circumstances show damages of a different amount. Neb. U.C.C. § 2-714(2) (Reissue 1971). Further damages may be recovered under § 2-715 as incidental and consequential damages.

"In fixing the value of property if it were as warranted, as an element of the measure of damages, the purchase price has been said to be strong but not conclusive, the best, prima facie, strong prima facie, or, in the absence of other evidence, sufficient evidence of such value." 77 C.J.S. *Sales* § 367 at 1305 (1952); *Thompson Chrysler-Plymouth, Inc. v. Myers*, 48 Ala. App. 350, 264 So. 2d 893 (1972).

Damages are fixed by a comparison of the value of goods as warranted to the value of the goods as accepted, i.e., in their defective condition. Although the plaintiff presented evidence of the purchase price of the collator, it presented not even a scintilla of evidence of the value of the collator in the condition accepted.

"Although the ordinary measure, as provided in subsection (2) is usually the keystone for computing buyer's damages, *Valley Diecast Corp. v. A.C.W., Inc.*, 25 Mich. App. 321, 181 N.W.2d 303 (1970), *plaintiff has foreclosed this measure from the court's consideration by failing to either allege or offer proof on the issue of the 'value of the goods accepted,' i.e., in their defective state.* Damages, like any other element of plaintiff's cause of action, must be pled and proved, and the burden is on plaintiff to offer evidence of difference in value, if the judgment is to be based on that measure. *Neuman v. Spector Wrecking & Salvage*, 490 S.W.2d 875 (Tex. Civ. App. 1973); *Dolomite Limestone Products v. Kennedy Von Saun Manufacturing & Engineering Corp.*, 241 Mich. 279, 217 N.W. 26 (1928). In the absence of evidence demonstrating the amount of damages suffered, a buyer is not entitled to recover from seller for breach of warranty. *Opheim v. United Mobile Homes*, 511 P.2d 1289 (Wyo. 1973).

"Subsection (1) of 2-714, notably, provides an alternate rule allowing the computation of buyer's loss

'in any manner which is reasonable.' Thus, e.g., if the goods can be made to conform to the warranty by a reasonable expenditure, the cost of such expenditures may be the measure of damages for the breach. *Council Bros., Inc. v. Ray Burner Co.*, 473 F.2d 400 (CA 5 1973); *Meyers v. Antone*, 227 A.2d 56 (D.C. App. 1967). *Plaintiff, however, has offered no evidence of what such expenditures might amount to even though both plaintiff's experts appeared fully capable of offering such opinions based on their examinations of the H-100's defects." Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 382-83 (E.D. Mich. 1977).

Similarly, the plaintiff in the case at bar had foreclosed both methods of measuring damages from the jury as well as from this court on appeal.

The only alternative might be to assume that the value of the machine was zero. Under the right circumstances that might be a good and valid assumption, as the court held in *Swenson v. Chevron Chemical Co.*, 89 S.D. 497, 506, 234 N.W.2d 38, 44 (1975): "If the insecticide had been as warranted, it would apparently have been worth $717. In its defective condition it cost Plaintiff a considerable sum and must for practical purposes have been deemed by the jury to have been worth nothing. This conclusion is not unreasonable under the circumstances." However, a look at the record in the instant case reveals that the machine would probably have at least salvage value, if not be very valuable given the proper repairs and maintenance. A conclusion that the machine is worthless in these circumstances would not be reasonable.

Even though the plaintiff has not proven general damages under § 2-714, it still may recover damages under § 2-715 as incidental and consequential damages. In *Addressograph-Multigraph v. Zink*, 273 Md. 277, 329 A.2d 28 (1974), the court stated that although the buyer could have recovered damages under § 2-714, he for some reason sued only for consequential

damages. This did not preclude him from recovering the lesser sum.

The plaintiff attempted to prove consequential damages by submitting evidence of the amount of time spent on each collating job, the value of both employee and managerial time spent on each job, and the amount of attorney fees incurred by Settell's in its litigation of the dispute with NBC Leasing Company. However, as the defendant points out, there is no proof of what the job would have cost if the collator had been used, so there is no way to compare what the increase in costs was. Neither does the plaintiff prove, in any concrete manner, what he may have made in further profits. After objections to the evidence were sustained, Settell's made an offer of proof that the amount of attorney fees incurred by it in the earlier litigation was $6,142.80. No attempt was made to prove that this sum was fair and reasonable, and the evidence was properly excluded.

There simply appears to be a total failure of proof of damages. The reason for this does not appear to be for lack of damages, but more for lack of proof of them at trial.

The plaintiff's attorney had given the trial court no choice but to direct a verdict for the defendant, by a complete failure to prove his client's case. We similarly have no choice but to affirm that ruling.

AFFIRMED.