LANGE BUILDING AND FARM SUPPLY, INC.,
A CORPORATION, APPELLEE, V. OPEN CIRCLE "R", INC.,
A CORPORATION, APPELLANT.
342 N.W.2d 360

Filed December 23, 1983.   No. 82-412.

Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Sidwell & Shofstall, for appellee.

BOSLAUGH, WHITE, and HASTINGS, JJ., and BROWER and MCGINN, D. JJ.

BROWER, D.J.

This action was brought by Lange Building and Farm Supply, Inc. (builder), to recover for breach of a written contract for the repair of a grain storage bin and, for its second cause of action, to recover money for improvements made to a second grain bin under an oral contract.

Open Circle "R", Inc. (owner), denied generally the claims of builder's first cause of action, admitted there had been a written agreement for such work, but alleged that builder had failed to substantially perform the contract. By way of cross-petition, counterclaim, and setoff, owner claimed damages, alleging that builder had damaged steel panels while attempting to repair the bin; had impliedly warranted its work; in breach of said warranty had caused damage, which was the fair and reasonable value of the labor and material required to repair the bin; and had, in addition, damaged a grain auger, which had to be replaced.

In answer to the second cause owner admitted the performance by builder of the oral contract to provide improvements for the second grain bin, but disputed the consideration due builder for the performance.

This case had previously been before the court for review, *Lange Building & Farm Supply, Inc. v. Open Circle "R", Inc.*, 210 Neb. 201, 313 N.W.2d 645 (1981), where this court had reversed the dismissal of the builder's suit by the trial court and remanded the case for further proceedings. The case was retried

to a jury, at the conclusion of which a verdict was rendered for builder in the amount of $5,714.05. Upon the overruling of owner's motions for a new trial and judgment notwithstanding the verdict, appeal was made to this court.

The owner-appellant assigns certain errors in the proceeding below, and they are as follows: (1) The court failed to sustain owner's motion for a directed verdict at the close of builder's case; (2) The court erred in failing to give certain instructions to the jury proposed by owner; and (3) The court erred in failing to declare a mistrial.

The law is clear that a motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the verdict is sought, and the party must be given the benefit of every inference which can reasonably be drawn therefrom. *El Fredo Pizza, Inc. v. Roto-Flex Oven Company*, 199 Neb. 697, 261 N.W.2d 358 (1978); *Settell's, Inc. v. Pitney Bowes, Inc.*, 209 Neb. 26, 305 N.W.2d 896 (1981).

"[W]here reasonable minds may differ as to conclusions or inferences to be drawn from the evidence . . . such issues must be submitted to the jury." *Hansen v. Hasenkamp*, 192 Neb. 530, 534, 223 N.W.2d 44, 47 (1974); *Gerhardt v. McChesney*, 210 Neb. 351, 314 N.W.2d 258 (1982).

We must therefore review all of builder's evidence and the pleadings in this posture. The evidence discloses that the parties had entered into a contract to repair a storm-damaged grain bin following an inspection of the building by builder. Builder's president, who had discussed the repairs with Robert Cruise, president of owner, testified that they had discussed various ways that repairs might be made. This discussion took place in December of 1977. Following that discussion, builder conveyed a proposal to owner, which was delivered by mail in February of 1978.

After builder's proposal had been delivered to owner, the parties discussed three plans contained in the proposal. The first plan set out in the proposal provided for the removal of damaged steel sheets from the structure, and for the replacement thereof. The testimony shows that this plan would involve a high degree of risk, and no attempt was to be made to repair the bin in this fashion.

The second plan, which was designated as "Option I" in the contract or proposal, provided that the roof section, including the top two rings, was to be lifted off the damaged structure and the damaged plates replaced, followed by the lowering of the top rings and roof to the structure. "Option I" provided for consideration in the amount of $5,539.05.

The contract also contained a third plan, designated "Option II." This plan involved the jacking down of the entire bin and replacing the damaged steel sheets as the bin was reconstructed. The contract sets forth that the consideration for this "Option II" was $6,739.05.

Builder's testimony disclosed that if the attempted repairs under "Option I" did not succeed, it would then proceed to make the repairs under the plan provided in "Option II." Builder's testimony indicates that owner had agreed to such plan, provided owner was notified before builder proceeded with "Option II."

The contract or proposal that was signed by both parties does not specify which method of repair was to be undertaken by builder.

Builder did proceed to do the repair work on the first grain bin by resorting to the plan set forth in "Option I." The roof and top two rings were lifted off by a large crane, and the damaged panels were replaced. Upon attempting to lower the top two rings and roof sections to the bottom portion of the bin, an auger was damaged, which is admitted by builder. The testimony reflects that builder agreed

to adjust for this damage, but the parties could not agree as to the value of the auger.

When builder attempted to refasten the repaired top section of the bin and roof to the lower section, it was determined that the removed section would not fit the lower portion. Chains, clamps, and various tools were used in an attempt to draw the bin sections together, but all such efforts failed, and owner, after viewing the building, instructed builder to stop work. By use of a transit it was discovered at this time by builder that the foundation on one side of the bin had settled, thus causing the top of one side of the lower section of the bin to be lower than the other. For this reason the removed section could not be reattached to the lower portion.

Builder then instructed owner that there was no point in proceeding any further with "Option I" and that it would have to proceed with "Option II" if the bin were to be repaired. At this juncture owner informed builder that owner wanted to consult with others first.

No further directions came from owner, and owner employed another contractor to make the repairs under "Option II" set forth in the contract. After builder submitted its bill for work performed under "Option I" and owner failed to pay, this action was commenced.

Performance of the work as to the second grain bin was admitted, and there appears only a dispute as to what builder was to receive for the work performed.

All of the evidence thus adduced, together with the pleadings, in builder's case, viewed in the light most favorable to that party, could reasonably show that builder had substantially performed its part of the agreement as far as it could go when owner refused to permit builder to proceed under "Option II" when the method of repair outlined under "Option I" failed to accomplish the desired result. The trial

court was correct when it overruled owner's motion for a directed verdict.

We next proceed to the question raised by the failure of the court to submit to the jury owner's tendered instruction No. 6. The trial court in its instruction defined substantial performance as follows: "Each party to a contract has a duty to perform his obligations under the contract. Performance may be substantial even though every detail is not in strict compliance with the terms of the contract; something less than perfection is required. Some measure of nonperformance will be tolerated if the defendant has received, with relatively minor and unimportant deviations, what he bargained for. But if the defect or uncompleted performance is of such extent and nature that there has been no practical fulfillment of the terms of the contract, then there has been no substantial performance."

At the jury instruction conference owner's attorney offered in lieu thereof the following instruction No. 6: "A party cannot maintain an action on contract without a prior substantial performance on his part. Substantial performance is shown when the following circumstances are established by the evidence: (1) The party made an honest endeavor in good faith to perform his part of the contract. (2) The results of the endeavor are beneficial to the other party. (3) Such benefits are retained by the party. If any one of the circumstances is not established, performance is not substantial and the party has no right of recovery. Or alternatively, substantial performance is shown in a building contract when all of the essentials necessary to the full accomplishment of the purpose for which the thing contracted for has been constructed and performed with such an approximation to complete performance that the owner then obtains substantially what is called for by the contract."

This court has held that substantial performance must be shown before an action on the contract can

be brought. *Schweitz v. Robatham*, 194 Neb. 668, 234 N.W.2d 834 (1975). The court has also held that substantial performance is shown in a building contract when all of the essential elements necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed and performed with such an approximation to complete strict performance that the owner obtains substantially what is called for by the contract. *Jones v. Elliott*, 172 Neb. 96, 108 N.W.2d 742 (1961); *Tibbs v. Fisher*, 208 Neb. 306, 303 N.W.2d 293 (1981).

Owner in this action cites *Alliance Tractor & Implement Co. v. Lukens Tool & Die Co.*, 194 Neb. 473, 233 N.W.2d 299 (1975), for the proposition that substantial performance is shown when the following circumstances are established by the evidence: (1) The party made an honest endeavor in good faith to perform its part of the contract; (2) The results of the endeavor are beneficial to the other party; and (3) Such benefits are retained by the other party. If any one of the circumstances is not established, the performance is not substantial and the party has no right to recover.

It is noted that the rule taken from that case was discussed by the court previously in *Rickertsen v. Carskadon*, 172 Neb. 46, 108 N.W.2d 392 (1961), when this court ruled that the three elements, standing by themselves, required something further.

The court ruled in *Rickertsen v. Carskadon, supra*, that substantial performance was shown where the jury could believe the plaintiff in good faith substantially performed the terms of his contract, but that if there were some slight omissions or defects which were not so essential as to defeat the object of the parties, but could be readily remedied, then the plaintiff could recover the contract price less the damages occasioned by the omission or defect. Such damages were what it would have cost the defendant to remove the defect or omission, and thus give to the defendant what his contract called for.

The question, then, before the court is whether or not the instruction as given, including all other instructions given in the proceeding by the trial court, properly sets forth the requirement of substantial performance.

Instruction No. 2 sets forth that the plaintiff was required to substantially perform the work to be performed under the terms of the contract and that the burden was upon it to show such substantial performance. Instruction No. 2 also contained the following: "If the jury determines that the plaintiff is entitled to recover against the defendant on the claims of the plaintiff and that the defendant is entitled to recover against the plaintiff on its counterclaim, then you should deduct the lessor [sic] amount from the greater amount and return your verdict in favor of the party entitled to the greater amount for the difference only."

It is noted that owner-appellant did not object to this instruction.

Instruction No. 6 states that each party has a duty to perform its obligations under the contract. The first requirement would be that the party make an honest endeavor to perform. The second would be that the other party receive some benefit which was retained. It is noted that the instruction as given provides that some measure of nonperformance would be tolerated if the defendant has received, with relatively minor and unimportant deviations, what was bargained for.

It would appear to the court that although the instruction given is somewhat different than that submitted by owner, nothing really has been omitted when all of the instructions given are considered together.

Our court has ruled that jury instructions must be considered together, and if when considered as a whole they state the law correctly, they are not erroneous. *Gee v. Dinsdale Brothers, Inc.*, 207 Neb. 224, 298 N.W.2d 147 (1980). This court has also held

that in framing the instructions it is not necessary that the trial court follow the exact language used by this court in stating a rule of law. *Segebart v. Gregory*, 160 Neb. 64, 69 N.W.2d 315 (1955).

In view of the above we believe that the instruction given, although not set forth in the same terms as that offered by owner, was sufficient.

The court comes next to the question of whether or not the trial court erred in failing to sustain owner's motion for mistrial. Owner sets forth that the court committed prejudicial error in failing to sustain the motion for mistrial where builder's attorney in cross-examination of owner's president obtained responses to questions wherein insurance was injected into the case.

Owner cites *Motis v. Manning*, 200 Neb. 593, 264 N.W.2d 844 (1978), in support of the proposition that where insurance has been interjected into the case, the court must admonish the jury, and upon proper motion by the adverse party dismiss the case. In the present case the reference to insurance first came up during the cross-examination of owner's president by builder's counsel. The questions leading up to the disclosure were as follows: "Q During the first visit that Bill Lange made to your farm when you first talked about this option 1 for repairs to the grain bin, was there anyone present other than you and your son and Bill Lange? A Not at the moment we were talking. There was another man on the farm also examining the tanks. Q What was his name? A I don't know. He's with MFA Insurance."

No objection was made by owner's counsel at the time this response was made, nor did the court admonish the jury to disregard such statement.

In a later cross-examination of the same witness by builder's counsel, the questions and answers were as follows: "Q Now, Mr. Cruise, you've not paid the Langes for any of the work that they did? A No, I haven't. Q In your cross-petition and in the evi-

dence that you've offered here, you're asking that Langes pay for the repairs done by Quail and by the electricians and all of those other people, is that correct? A Yes, damages that were occurred [sic]. Q Now when the wind damaged your bin, Mr. Cruise, damaged the bin belonging to Open Circle R, didn't you expect to have to pay somebody for those repairs? A That is what I carry insurance for, and I carry a lot of insurance."

This court notes that these responses injecting the reference to insurance into the case were answers unsolicited by builder's counsel and were not responsive to the questions asked.

The reference to insurance in *Motis v. Manning, supra*, came as a result of statements made by plaintiff's own witness in response to plaintiff's counsel's question. In that situation the error could have been avoided had counsel admonished his own witness prior to examination. That situation can be distinguished from the situation involved here because builder's counsel could not have anticipated such response from a hostile witness, especially where the answer was never solicited and was not responsive.

The general rule appears in Annot., 4 A.L.R.2d 761, 784 (1949), and has been adopted by most jurisdictions. "By weight of authority . . . the fact that an irresponsive or inadvertent answer includes a reference to insurance will not be ground for declaring a mistrial."

Where counsel propounds questions which call for proper evidence, the fact that an irresponsive or inadvertent answer includes reference to insurance will not be a ground for declaring a mistrial. This is especially true where the question is propounded by plaintiff's counsel on cross-examination of defendant's witness. *Muehlbach v. Mercer Mortuary and Chapel, Inc.*, 93 Ariz. 60, 378 P.2d 741 (1963); *McCaffery v. St. Louis Pub. Serv. Co.*, 363 Mo. 545, 252 S.W.2d 361 (1952); *Stewart v. Hilton*, 247 Iowa 988, 77

N.W.2d 637 (1956). Nor can the defendant complain if it is interjected by his own witness and the plaintiff is in no way responsible for it. *Flatt v. Hill*, 379 S.W.2d 926 (Tex. Civ. App. 1964); *El Rancho Restaurants, Inc. v. Garfield*, 440 S.W.2d 873 (Tex. Civ. App. 1969).

In the first instance builder's counsel asked for the names of persons present at the initial examination of the premises. In the second incident involved, builder's counsel asked who was to pay for the repairs, which would appear to be a relevant fact inasmuch as owner had refused to pay builder and had sought, coincidentally, in its countersuit, repair cost to be paid by builder to another contractor hired to proceed with "Option II." Builder's counsel had not interjected the insurance through any witness he could have admonished. The trial court did not abuse its discretion when it ruled that owner-appellant was not entitled to a mistrial.

The judgment of the trial court is affirmed.

AFFIRMED.