DON MILLER, APPELLEE, V. STAN ORTMEIER CONSTRUCTION CO., A NEBRASKA CORPORATION, APPELLANT.

426 N.W.2d 272

Filed July 22, 1988.    No. 86-1027.

John D. Feller, of Feller Law Office, for appellant.

Hurt & Gallant for appellee.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ., and JOHN MURPHY, D.J.

HASTINGS, C.J.

The plaintiff, Don Miller, brought this cause of action against the defendant, Stan Ortmeier Construction Co., alleging breach of express and implied warranties. The jury found for the plaintiff in the amount of $15,000. The defendant's motions for judgment notwithstanding the verdict and new trial were overruled.

The plaintiff owned a hog operation in Cuming County, Nebraska. Defendant is involved in the manufacture and sale of pig nurseries in Beemer, Nebraska. On January 4, 1985, the plaintiff informed defendant that he was interested in purchasing a nursery, and defendant invited plaintiff to visit it to see what it had to offer. That evening, plaintiff traveled to Beemer and furnished defendant with specifications of his needs.

Plaintiff was seeking a two-stage nursery. Defendant recommended a double-deck nursery, 12 by 18 feet in size (11 by 17 feet inside), in which the smaller pigs were confined in small pens on the upper level and the older pigs were confined in larger pens on the lower level. The pigs on the upper level were provided with supplemental heat through heat lamps over each pen, and with fresh feed. The entire building was ventilated with a "Martin-Air ventilator," and a flushing system was installed to carry away the manure which fell through the floor of the pens.

Plaintiff agreed to purchase the nursery, and on January 22,

1985, installation was completed. Plaintiff paid $21,386.05 to defendant for the nursery and installation. Plaintiff put the nursery into operation immediately upon installation.

Plaintiff soon noticed that the humidity level in the nursery seemed excessively high, the air circulation was excessive (creating a windchill effect), and the pigs were overcrowded, with no freedom of movement. In addition, the plaintiff felt that the rate of weight gain by the pigs was "totally unsatisfactory." The pigs were rough in appearance, gaunt, and had below-normal feed consumption. On occasion, the newly weaned pigs moved into the nursery actually weighed more than the older pigs which had been confined in the nursery for a period of time.

In spite of efforts to modify the building and equipment and to change feeding procedures, plaintiff saw no improvement. The pigs remained rough and unthrifty in appearance, with substandard weight gains. Some of the pigs contracted a virus, which the veterinarian testified is more commonly seen when pigs are under stress and the pigs' immunity systems are overwhelmed by drafty conditions, high humidity, or other factors.

In November 1985, the plaintiff weighed his options. Remodeling the building would not have been compatible with his operation, so he decided to trade in the unit. The defendant refused to take the nursery back, or trade it in, so the plaintiff traded it to another company and bought a used building.

Plaintiff testified that the building was represented to him by defendant to house 168 pigs, but that its actual capacity was near 120. Because of the reduced capacity, the worth of the building was reduced by $6,110.30; i.e., a nursery which could only take care of 120 pigs would be worth $15,275.75, as opposed to the $21,386.05 purchase price which the building would have been worth if it would have been as represented. This calculation was based on a fixed cost per pig.

At the conclusion of the plaintiff's evidence, the defendant moved for a directed verdict and a dismissal of the plaintiff's petition. It asserted that the plaintiff had not made a definite showing of damages or proximate cause. The trial judge overruled the motion, but found that the plaintiff had failed to

show lost profits and, therefore, informed the parties that he would instruct the jury on damages regarding implied warranty of fitness as to the building only.

The defendant presented evidence, and the jury was instructed. Concerning the element of damages, the court instructed the jury: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the building accepted and the value it would have had if it had been as warranted." Neither party had objections to the instructions.

The jury returned a verdict in favor of plaintiff in the amount of $15,000. The defendant moved for judgment notwithstanding the verdict and for a new trial. After a hearing, the court overruled both motions. The defendant subsequently appealed to this court.

Defendant assigns as error: (1) The trial court failed to rule that there was insufficient evidence of proximate cause of the damages; (2) the trial court entered judgment on a jury's verdict which exceeds the competent evidence and instructions of the court; and (3) the trial court failed to order a remittitur.

The plaintiff contends that, as the defendant failed to make a motion for directed verdict at the close of all of the evidence, it is precluded from arguing the overruling of its motion for judgment notwithstanding the verdict on appeal. While this may be true (see *Bourke v. Watts*, 223 Neb. 511, 391 N.W.2d 552 (1986)), the defendant nevertheless raised the issues that are now assignments of error in its motion for new trial. Thus, on appeal, the issues properly before this court may be summarized as: (1) whether the jury's finding of liability was supported by the evidence, and (2) whether the amount of damages assessed by the jury was excessive.

The defendant contends that the jury's finding that the defendant proximately caused the plaintiff's damages was not supported by the evidence. A jury verdict will not be disturbed on appeal unless it is clearly wrong. *Associated Wrecking v. Wiekhorst Bros.*, 228 Neb. 764, 424 N.W.2d 343 (1988); *Havlicek v. Desai*, 225 Neb. 222, 403 N.W.2d 386 (1987). Thus, the question is whether the jury's verdict as to the defendant's liability was clearly wrong.

The defendant argues that none of the plaintiff's witnesses, including the agricultural engineer and the veterinarian, specifically stated that the building design or construction caused the plaintiff's problems. Therefore, it argues, because there was evidence that other factors could have contributed to plaintiff's problems, the plaintiff failed to show proximate cause.

While plaintiff's witnesses may have failed to affirmatively state that defendant's building was a definite cause of the plaintiff's damages, there was more than a preponderance of evidence which could have led the jury to this permissible conclusion. The engineer did state that the building was "not satisfactory," and all 10 of his recommendations for improving the weight and health of the pigs involved modifications of the structure and operation of the nursery. Coupled with the evidence of the extensive attempts made by the plaintiff to rule out other factors (e.g., feed problems or other underlying health problems which could have caused the unsatisfactory results), the testimony of the plaintiff's witnesses was sufficient to indicate to the jury that the building itself was the true source of the plaintiff's damages. The evidence provided by the defendant did little, if anything, to contradict this conclusion. On the record and evidence before this court, it cannot be said that the jury's verdict was clearly wrong.

As to damages, the plaintiff attempted to prove damages "in the increased costs of producing marketable pigs." He also attempted to show the estimated cost of remodeling the building to meet his needs. He then attempted to show the price of the replacement nursery which he bought after trading in the nursery which he had purchased from defendant. In all of these attempts to prove consequential damages, the plaintiff encountered a great number of difficulties and a great number of objections. Lastly, the plaintiff testified as to the value of the building as purchased versus the value of the building as warranted. Again, plaintiff's counsel had great difficulty in eliciting the relevant information, but plaintiff eventually testified that, in his opinion, the building's actual value was $6,110.30 less than the value of the building if it would have been as warranted. This figure was based on the fixed cost per

pig with a 120-pig capacity, as compared to the fixed cost per pig with a 168-pig capacity.

At the close of the plaintiff's evidence, the court informed the parties:

> [T]here is not sufficient evidence in the record, as far as I view this record, for me to instruct this jury on any other element of damages. The only element of damages that I feel I can instruct on is the implied warranty of fitness as to the building only. The lost profits issue, I think plaintiff failed to meet its burden of proof.

At the conclusion of all of the evidence, the court instructed the jury:

> If you find for the plaintiff on the issue of liability on Plaintiff's petition, you must then fix the amount of money which will fairly and reasonably compensate plaintiff for any damages proved by a preponderance of the evidence to have proximately resulted from the defendant's breach of warranty.
>
> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the building accepted and the value it would have had if it had been as warranted.
>
> Whether any damages have been proved by a preponderance of the evidence is for you to determine.
>
> You are not permitted to allow any damages by way of punishment or through sympathy.
>
> Your verdict must be based upon evidence and not upon speculation, guess or conjecture.

Neither party objected to these instructions. The jury returned a verdict in the amount of $15,000 damages.

The defendant claims that this assessment of damages was excessive. The only evidence presented to the jury as to the difference between the value of the building as accepted by the plaintiff and its value if it had been as warranted by the defendant was plaintiff's testimony that he figured the difference in value was $6,110.30. Thus, asserts the defendant, any amount awarded over that amount was unjustified by the evidence and law, and should be the basis for a new trial or a remittitur.

The plaintiff emphasizes the court's instruction that the jury could award "*any* damages proved by a preponderance of the evidence to have proximately resulted from the defendant's breach of warranty," and apparently argues that the jury was not limited in this assessment by the formula for breach of warranty stated in the next paragraph of the instruction. (Emphasis supplied.)

Neb. U.C.C. § 2-714(2) (Reissue 1980) provides that the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted ($15,275.75, according to plaintiff's calculations) and the value they would have had if they had been as warranted ($21,386.05, the plaintiff's purchase price). However, this is not intended as an exclusive measure. § 2-714, comment 3. The buyer may also recover incidental and consequential damages where warranted. § 2-714(3) and Neb. U.C.C. § 2-715 (Reissue 1980). See, also, *Settell's, Inc. v. Pitney Bowes, Inc.*, 209 Neb. 26, 305 N.W.2d 896 (1981).

> When the purchaser of goods under the Uniform Commercial Code claims a breach of warranty, he must not only prove the warranty and the breach thereof; in addition, "[t]he purchaser has the burden of proving both the cause of the loss and the extent thereof. § 2-715, U.C.C., comments 4 and 5. Damages need not be proved with mathematical certainty, but the evidence must be sufficient to enable the trier of fact, in this case the jury, to estimate with a reasonable degree of certainty and exactness the actual damages. . . ."

209 Neb. at 29, 305 N.W.2d at 898; *Shotkoski v. Standard Chemical Manuf. Co.*, 195 Neb. 22, 237 N.W.2d 92 (1975); *Peterson v. North American Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625 (1984). See, also, *Lis v. Moser Well Drilling & Serv.*, 221 Neb. 349, 377 N.W.2d 98 (1985).

The plaintiff presented evidence as to the difference in value between the building as purchased and as warranted. "Damages, like any other element of plaintiff's cause of action, must be pled and proved, and the burden is on plaintiff to offer evidence of difference in value, if the judgment is to be based on that measure." *Settell's, Inc., supra* at 30, 305 N.W.2d at

898-99; *Nebraska Truck Serv. v. U.S. Fire Ins. Co.*, 213 Neb. 755, 331 N.W.2d 266 (1983). The plaintiff met his burden of proving his damages in this respect; i.e., he presented evidence as to the difference in value with sufficient certainty as to allow the jury to reach a conclusion as to those damages. Cf. *Settell's, Inc.*

However, the court found that the plaintiff had failed to meet his burden of proof as to the other damages which he had attempted to prove. " 'It is fundamental that the plaintiff's burden to prove the nature and amount of damages cannot be sustained by evidence which is speculative and conjectural.' . . .'Damages must be proved with all the certainty the case permits and cannot be left to conjecture, guess, or speculation.' " *Nebraska Truck Serv., supra* at 759, 331 N.W.2d at 268. Hence, the court refused to allow the jury to consider any measure of damages other than the "difference-in-value" formula on which the jury was instructed. "It is the duty of the District Court to refrain from submitting to the jury the issue of damages where the evidence is such that it cannot determine that issue without indulging in speculation and conjecture." *Shotkoski, supra* at 28-29, 237 N.W.2d at 97; *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978).

Thus, the only measure of damages which was proved with sufficient certainty so as not to be subject to a verdict based on guess or speculation was the measure of the difference in value between the building as purchased and as warranted. The court's instructions to the jury reflected this finding. The court specifically instructed the jury on the difference-in-value calculation and warned it against basing a verdict upon "speculation, guess or conjecture." Taken as a whole, the instructions made it clear to the jury that it was not to consider any measure of damages other than the difference in value, and the plaintiff's argument to the contrary misses the mark.

The record, as a matter of law, does not support a verdict and judgment for more than $6,110.30. Accordingly, we modify the judgment by reducing the award from $15,000 to $6,110.30. In all other respects the judgment is affirmed.

AFFIRMED AS MODIFIED.