ADC-I, LTD. LIMITED PARTNERSHIP, A NEBRASKA LIMITED PARTNERSHIP, APPELLEE, V. PAN AMERICAN FUELS, LTD.-GULF COAST, AND PAN AMERICAN INDUSTRIES, LTD./MID-AMERICA, APPELLANTS.

525 N.W.2d 190

Filed December 23, 1994.   No. S-93-680.

Douglas G. Pauley, of Conway, Connolly & Pauley, P.C., and Robert J. Salazar for appellants.

T. Randall Wright and Steven D. Schaal, of Dixon & Dixon, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WHITE, J.

Pan American Fuels, Ltd.-Gulf Coast and Pan American Industries, Ltd./Mid-America (collectively, Pan American) appeal from the decision of the district court for Adams County, dismissing their claim for damages due to an alleged breach of contract by ADC-I, Ltd. (ADC). We affirm.

This contract dispute began after ADC had solicited bids to sell its ethanol manufacturing plant located near Hastings, Nebraska. ADC, a limited partnership, had been instructed to sell the property by the Federal Savings and Loan Investment Corporation (FSLIC), the conservator of ADC's general partner, American Diversified Savings Bank, a California savings and loan institution. ADC selected Pan American's proposal as one of three final proposals. In its letter to Pan American informing Pan American that it had been selected as one of three final bidders, ADC instructed Pan American to provide it with Pan American's requirements for fully assuming a first trust deed note and for posting an earnest deposit of 1 percent of the purchase price upon acceptance.

Pan American's amended proposal provided that it would "assume fully the 'first trust deed note' covering the ADC Plant held by Security Bank of Kansas City and guaranteed by the Farmers Home Administration." Pan American's amended proposal also provided that it would

> pay an earnest money deposit of 'one percent (1%)' of the purchase price for the ADC Plant. . . . The earnest money deposit shall be delivered to the FSLIC by Pan American, in the form of a cashier's check or certified check, upon the FSLIC's written acceptance of Pan American's offer to purchase the ADC Plant.

ADC selected Pan American's amended proposal of more than $16.5 million, informing Pan American that its "proposal to purchase the . . . Plant . . . has been selected as the proposal best serving the interests of the [FSLIC]."

On June 30, 1989, the parties executed an asset purchase contract. Article II of the contract, entitled "Purchase Obligations," contains a provision relevant to Pan American's assumption of the first trust deed note. Section 2.1.4 provides:

Assumption of Existing Indebtedness. The outstanding principal amount calculated as of the Closing Date of the note held by Security Bank of Kansas City and relating to the ADC I Assets is to be assumed by Buyer. Without intending to diminish the importance of any of the other conditions of closing established in Article VIII of this Agreement, it is specifically noted that Security Bank of Kansas City and the Farm[ers] Home Administration must approve Buyer for complete assumption of all of Seller's obligations under the First Deed of Trust as a condition of Seller's obligation to close.

Article VIII of the contract, entitled "Conditions Precedent to the Closing," also contains a provision relevant to the loan assumption. Section 8.1.6 provides:

Buyer's Assumption of Debt. Buyer, Seller, Security Bank of Kansas City (the "Bank") and Farm[ers] Home Administration (the "Guarantor") shall have agreed to the transfer to Buyer of all of Seller's rights in, and the assumption by Buyer of[,] all of Seller's liabilities under a Loan Agreement dated November 19, 1982 by and among Seller, the Bank and the Guarantor, as amended.

Furthermore, article II also contains the provision relevant to Pan American's obligation to post an earnest money deposit upon acceptance of its amended proposal. Section 2.3.1 provides in relevant part: "Earnest Deposit. Within five days following the execution of this Agreement, Buyer shall deliver to Seller a letter of credit (the 'Letter of Credit') in the amount of $165,000 and an enforceability opinion reasonably satisfactory to Seller." Under § 2.3.1, the $165,000 letter of credit and enforceability opinion were due July 5, 1989.

On July 4, 1989, Robert Salazar, Pan American's president, informed ADC that Pan American had not had sufficient time to post the letter of credit and requested an extension. Because one of the days in the 5-day period was a holiday, ADC agreed to allow Pan American 5 "business" days from the date of

execution to post the $165,000 letter of credit and enforceability opinion. The new due date therefore was July 10. ·

When Pan American failed to post the $165,000 letter of credit and enforceability opinion by July 10, ADC demanded that Pan American post the letter of credit and enforceability opinion by July 12. On July 12, Pan American contacted ADC to inform ADC that Pan American would post a "company" letter of credit (drawn on Pan American). ADC's counsel informed Pan American that a company letter of credit was unacceptable.

Thereafter, when Pan American failed to post a bank letter of credit and an enforceability opinion by July 19, ADC sent Pan American a letter requiring Pan American to comply by "12:00 noon, Central Daylight Time, July 26." In addition, on July 20, ADC's counsel contacted Salazar by telephone to inform him of the July 26 deadline; Security Bank of Kansas City, also on July 20, rejected Pan American's request to assume ADC's loan on the ethanol manufacturing plant. By the July 26 deadline, ADC had received from Pan American a letter of credit for only $27,500; ADC had not received an enforceability opinion. Although ADC had received letters of credit for $137,500 by the end of business on July 26, ADC nevertheless, on July 27, decided to rescind the contract and sent Pan American a letter so stating.

Subsequently, on December 11, 1989, ADC filed an equitable action to quiet title to the property. ADC did not, however, seek money damages against Pan American. Along with its answer, Pan American filed a counterclaim against ADC, seeking specific performance and money damages. Before trial, Pan American chose to go to trial solely on the issue of damages for breach of contract. The district court granted ADC's petition to quiet title and dismissed Pan American's counterclaim for money damages. Pan American has appealed.

Pan American contends that the district court erred in dismissing its claim for damages. This case began as an action to quiet title in ADC. A suit to quiet title is equitable in nature, and an appellate court reviews the record in such a case de novo and reaches an independent conclusion without reference to findings of the trial court. However, when credible evidence is

in conflict, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Saunders v. Rebuck*, 242 Neb. 610, 496 N.W.2d 472 (1993); *Nennemann v. Rebuck*, 242 Neb. 604, 496 N.W.2d 467 (1993). See, also, *Wahrman v. Wahrman*, 243 Neb. 673, 502 N.W.2d 95 (1993).

The gravamen in this appeal is whether Pan American could bring this action for damages due to ADC's alleged breach. To successfully bring an action on a contract, a claimant first must establish that the contract has been substantially performed on the claimant's part. See, *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993); *Lange Bldg. & Farm Supply v. Open Circle "R"*, 216 Neb. 1, 342 N.W.2d 360 (1983); *Schweitz v. Robatham*, 194 Neb. 668, 234 N.W.2d 834 (1975). A contract has been substantially performed if the claimant proves all three of the following elements: (1) It made an honest endeavor in good faith to perform its part of the contract, (2) the results of its endeavor are beneficial to the other party, and (3) the other party retained those benefits. *Lange Bldg. & Farm Supply, supra*. If the claimant fails to establish any one of these elements, then the contract has not been substantially performed, and the claimant cannot maintain an action on the contract. *Id.*

In the case at bar, the evidence shows that the claimant, Pan American, failed to establish all three elements. First, Pan American failed to show that it made an honest endeavor in good faith to perform its part of the contract. The evidence is in fact to the contrary. The evidence shows that Pan American continually failed to attempt to meet its obligation under § 2.3.1 to post a $165,000 letter of credit and enforceability opinion, and when it did, Pan American first attempted to post a bogus letter of credit, drawn on itself. Subsequently, when ADC imposed a firm deadline for compliance, Pan American posted only a $27,500 letter of credit and no enforceability opinion. Only after ADC rescinded the contract did Pan American comply with § 2.3.1's requirements. This continual failure to timely satisfy the contractual requirements of § 2.3.1 for posting a letter of credit and enforceability opinion shows that Pan American did not make an honest endeavor to perform its

part of the contract in good faith. Pan American therefore has failed to establish the first element.

Second, because Pan American failed to perform at all, ADC did not derive any benefit. Although ADC would have benefited if Pan American had performed, the record contains no evidence that ADC benefited because no act occurred from which ADC could possibly have benefited. Pan American therefore has also failed to establish the second element.

Third, Pan American failed to show that ADC had retained a benefit from its actions. In fact, not only did ADC not retain any benefit from the contract, ADC also lost approximately $6 million due to Pan American's nonperformance. ADC, which had contracted with Pan American to sell its ethanol manufacturing plant to Pan American for more than $16.5 million, eventually sold it for only $10 million. Pan American therefore has also failed to establish the third element.

Because Pan American failed to establish that it had substantially performed under the contract, it cannot maintain an action on that contract against ADC. The district court therefore properly dismissed Pan American's action for damages.

On appeal, Pan American assigns seven additional errors. However, because Pan American failed to substantially perform under the contract and because that issue is dispositive, we do not reach Pan American's seven other assigned errors. We affirm the district court's decision, dismissing Pan American's claim for damages.

AFFIRMED.